## No. C-489

**Mike Samuelson, Eric M. Samuelson, Stephen W. Tanner, v. Alice Douthirt, individually and as members of the last Board of Directors of Veterans Gas and Service, Inc., and Veterans Gas and Service, Inc., a corporation v. Dan T. Chutich and Gladys M. Chutich, and Continental Casualty Company**

(529 P.2d 631)

Decided December 16, 1974.

Paul D. Renner, for petitioners.

Yegge, Hall & Evans, John R. Trigg, for respondent Continental Casualty Company.

Jagger and Macrorie, Laurence A. Ardell, for respondents Dan T. Chutich and Gladys M. Chutich.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals opinion found at 33 Colo. App. 195, 518 P.2d 1363. We affirm in part and reverse in part.

The facts are set forth in the Court of Appeals opinion in considerably more detail than here. The defendant Veterans Gas & Service, Inc. (Veterans) installed a gas line leading to the plaintiffs' residence. Nearly six years later the plaintiffs were injured in an explosion, allegedly caused by the unworkmanlike installation of the line. Plaintiffs pleaded two claims in the complaint; one based on negligence in the installation of the pipe and one for breach of implied warranty arising out of the contract to install the pipe. Specifically, the contract embraced the installation of two gas appliances. At all stages in the case, the issue as to implied warranties was treated as if this were merely a contract to render services. The trial court granted defendants' motion to dismiss the breach of warranty claim on the grounds that there was insufficient evidence of the contract and upon the breach

thereof. The jury found in favor of the defendants upon the negligence claim.

The Court of Appeals held that there was sufficient evidence to send the issue of implied warranty to the jury and held, we believe for the first time in Colorado, that a contract to furnish services carries with it an implied warranty of workmanlike conduct. We reverse on this issue.

We affirm the ruling that the trial court committed reversible error in giving a foreseeability instruction.

Veterans was insured under a policy of the defendant Continental Casualty Company at the time of the installation. Veterans later became defunct. That policy expired nearly five years prior to the explosion. It provided:

"This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

The trial court held that Continental Casualty Company was liable under the policy for any damages awarded and for the costs of litigation. The Court of Appeals reversed. Here we affirm the Court of Appeals.

I.

■ As stated by the Court of Appeals, the statutory warranties imposed by the Uniform Sales Act do not apply here. We regard it as the better part of wisdom not to extend as a matter of law implied warranties from *sales* to *service* contracts. We believe it the better rule to limit liability to acts of negligence. We follow the well documented opinion in *Pepsi Cola Bottling Co. v. Superior Burner Serv. Co.*, 427 P.2d 833 (Alaska 1967). There is no need for us to cite very much other authority as there is a wealth of citations in that opinion.

This is the rule of a great majority of courts. Note, *Implied Warranties in Service Contracts*, 39 Notre Dame Lawyer 680 at 683 (1964).

■ In *Gagne v. Bertran*, 43 Cal. 2d 481, 275 P.2d 15 (1954), Justice Roger J. Traynor wrote:

"Thus the general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct.

\* \* \* \*

"The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance."

Under a doctrine of implied warranties, there could be liability without fault in service contracts. This should not be the court-made law in this state. We will just stay with that reliable fellow — the reasonably prudent man.

## II.

The trial court gave the "foreseeability" instruction set forth in *Colorado Jury Instructions* 9:28 as follows:

"Defendant's negligence, if any, is not the proximate cause of any injury to the plaintiff, unless injury to a person in the plaintiff's situation was a reasonably foreseeable consequence of that negligence. The exact or precise injury need not have been foreseeable. It is sufficient if a reasonably prudent person, under the same or similar circumstances, would have anticipated that injury to a person in the plaintiff's situation might result from the defendant's conduct."

The Court of Appeals ruled that the giving of this instruction was reversible error, stating:

"This instruction is necessary only when the evidence presents a jury question on whether the injured party was a person within the foreseeable zone of danger created by defendant's negligence and thus was owed a duty by defendant. *See W. Prosser, Torts* § 43 (4th ed.). There is no question in this case that defendants owed plaintiffs a duty of care in installing the propane system. Submission of the foreseeability instruction presented to the jury an element not properly before it in the instant case. The verdict does not preclude the possibility that the jury considered 'foreseeability' as it related to the reasonableness of defendants' conduct in laying the pipe, as counsel for defendants in final argument asserted it should, as opposed to defining the duty owed by defendants."

We agree with and affirm the Court of Appeals as to this issue.

■ The rules relating to the giving of instructions concerning negligence, contributory negligence and proximate cause are substantially applicable here. As was stated in *Buchholz v. Union Pacific R. R. Co.,* 135 Colo. 331, 311 P.2d 717 (1957): "Questions of negligence and proximate cause are for the court where the evidence, and the inferences to be drawn therefrom, [are] such that reasonable men, giving fair consideration thereto, must reach the same conclusion." *See Fowler Real Estate Company v. Ranke,* 181 Colo. 115, 507 P.2d 854 (1973).

■ If it appears to the court under the guidelines set forth in *Buchholz, supra,* that the plaintiff was not within the zone of foreseeable danger created by the defendants, then there is no negligence and a verdict should be directed in favor of the defendant. *See Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). Likewise, under such guidelines, when as here the plaintiff is within that zone, the foreseeability instruction should not be given. In those cases where there is a question of fact as to whether the plaintiff was within the zone, the instruction is to be given.

■ In this case, it is clear as a matter of law that this plaintiff was within the foreseeable zone of danger, and that the risk created by the alleged negligent laying of the pipe was also foreseeable.

### III.

■ As to the question of when the "accident" occurred, we agree with the Court of Appeals that it did not occur during the policy period. We quote with approval from the Court of Appeals opinion:

"The insurance policy in question is not ambiguous; it covers only those injuries which are the result of accidents occurring during the period the policy was in force. The 'accident' causing injury in this case occurred at the time of the explosion, not when the allegedly wrongful act was committed. *Home Mutual Fire Insurance Co. v. Hosfelt,* 233 F. Supp. 368 (D.C. Conn.) . . . . As the court stated in *Hosfelt, supra,*

" 'To stretch the scope of "accident" backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlooked-for mishap would introduce ambiguity where none now exists.' "

In *Century Mutual Insurance Co. v. Southern Arizona Aviation, Inc.*, 8 Ariz. App. 384, 446 P.2d 490 (1968), it was stated that the word "accident"
"clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune."
Accordingly, the defendants were not covered by the insurance policy when the accident occurred. For that reason, there can be no liability upon Continental Casualty Company.

The cause is remanded to the Court of Appeals with directions to issue a remittitur consonant with the views expressed in this opinion.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE KELLEY dissent.

MR. JUSTICE KELLEY dissenting:
I respectfully dissent on two aspects of the case.

I.

First, I would agree with the Court of Appeals' holding that:
". . . Whenever a person holds himself out as specially qualified to perform work, the common law implies a warranty that the task will be executed in a workmanlike manner and the result will be reasonably fit for its intended use. *Aced v. Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897; *In re Estate of Talbott*, 184 Kan. 501, 337 P.2d 986; *McCool v. Hoover Equipment Co.*, 415 P.2d 954 (Okl.) . . . . This warranty is particularly important where, as in this case, there is substantial risk of disastrous consequences if the work is not performed carefully and the purchaser lacks the expertise needed to evaluate the quality of the workmanship or to discover defects."

Although the Court of Appeals treated the contract as one for the furnishing of services, as did the majority above, in my opinion the facts justify treating the contract as one for the furnishing of *labor and materials*. To me this is the more appropriate approach.

In the *Hobbs-Sesack Plumbing Co.* case the defendant contracted to furnish the necessary labor and material to install a radiant heating system in a house being constructed by the plaintiff. It appears that the heating system was installed in a work-

manlike manner and that the pipe was of good quality, as here, but that the pipe was not reasonably suitable for the intended use, also, as in the present situation. The pipe, in the California case, which was laid in a concrete floor slab, leaked because of corrosion. The corrosion was caused by breaks in the plastic covering which are normally caused in the course of installation, by workmen stepping on the pipes or from the stones in the concrete.

In any event, the California court concluded that the contract was one for labor and material and that there was an implied warranty, stating, following the citation of *In re Talbott's Estate, supra,* among others,

". . . These cases support the proposition that although the provisions of the Uniform Sales Act with respect to implied warranty (Civ. Code, §§ 1734-1736) apply only to sales, similar warranties may be implied in other contracts not governed by such statutory provisions when the contracts are of such a nature that the implication is justified."

The Kansas Supreme Court, *In re Talbott's Estate, supra,* in a situation comparable to that confronting this court, held,

". . . it is generally recognized that when a party binds himself by contract to do work or perform a service, in the absence of express agreement, there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable and appropriate skill [citing cases]."

In *McCool v. Hoover Equipment Co., supra,* the Supreme Court of Oklahoma held that where service predominates and transfer of personal property is only incidental to transaction, it is transaction for work, labor and materials and not a sale. Oklahoma following the *Hobbs-Sesack Plumbing Co.* case, *supra,* then quoted the following from that opinion:

"There may nevertheless be an implied warranty. It was said in *Gagne v. Bertram,* 43 Cal.2d 481, 486, 275 P.2d 15, that for historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels but that they are not confined to such transactions. Several cases dealing with construction contracts and other contracts for labor and material show that ordinarily such contracts give rise to

an implied warranty and that the product will be fit for its intended use both as to workmanship and materials.'' (Cases cited.)

II.

I disagree on Part III. I would hold that the ''accident'' occurred at the time the pipe was laid. The breach of the implied warranty to use reasonable and appropriate care and skill, that is, to do a workmanlike job may have resulted from the negligence or failure to use due care and skill at the time of performing the particular job. The cause of action accrued at that time. *In re Talbott's Estate, supra.*

Since it is the breach of a contractual duty — the implied warranty — which gives rise to the cause of action, plaintiffs could have proceeded immediately following the breach and could have recovered nominal damages for placing the pipe in the ashes without a proper protective coating, or whatever might have been their damages to that point. *In re Talbott's Estate, supra.*

I agree with the trial court that the ''accident'' was a continuing process which began when the pipe was allegedly negligently installed and culminated in the explosion over five years later. Liability attached at the time of the breach; damages, other than nominal, occurred at the time of the explosion. *Travelers v. Humming Bird Coal Co.,* 371 S.W. 2d 35 (Ky., 1963); *Kissel v. Aetna Casualty & Surety Company,* 380 S.W. 2d 497 (Mo. App. 1964).

This situation is analogous to the accident-injury philosophy found in workmen's compensation cases. The time for filing claim does not run from the time of accident, but from the time the claimant, as a reasonable man, is able to recognize the compensable character of his ''injury'' resulting from the ''accident.'' *City of Boulder v. Payne,* 162 Colo. 345, 426 P.2d 194 (1967).

I would hold that the breach occurred during the term of the insurance policy and that the judgment of the Court of Appeals on this aspect of the case be reversed.

MR. CHIEF JUSTICE PRINGLE joins in this dissent.