## AMERICAN EMPLOYER'S INSURANCE COMPANY, Plaintiff–Appellee,

v.

## PINKARD CONSTRUCTION COMPANY, and Adams–Arapahoe Joint School District No. 28–J, Defendants–Appellants.

No. 89CA0821.

Colorado Court of Appeals, Div. I.

Aug. 2, 1990.

Rehearing Denied Sept. 6, 1990.

Certiorari Granted March 11, 1991.

Weller, Friedrich, Ward & Andrew, Geoffrey S. Race, Debra K. Sutton, Denver, for plaintiff-appellee.

Holland & Hart, Wiley E. Mayne, Jr., Lynn Bolinske, Denver, for defendants-appellants.

---

Opinion by Judge PIERCE.

In this action involving progressive property damage, Pinkard Construction Company (Pinkard) and Adams–Arapahoe Joint School District No. 28–J appeal a declaratory judgment in favor of plaintiff, American Employers Insurance Company (American), construing the plaintiff's liability under a series of successive general liability insurance policies as limited to the policy in effect when the damage became manifest. We reverse.

The facts of this case are undisputed and involve the corrosion of a roof installed by Pinkard. The corrosion was a continuous, progressive condition which began immediately following the construction of the roof in 1973 and which was caused by the use of a certain fill material. By the time the portions of the roof collapsed in 1984 and the corrosion was discovered, the damage was widespread.

From 1977 until the date the roof collapsed, Pinkard was insured by American under a series of successive primary and umbrella comprehensive general liability insurance policies. American brought this declaratory action for a determination of its indemnity obligations under the policies. The district court ruled that American's obligation to indemnify Pinkard was limited to the terms of the policy in effect on the date the roof collapsed.

■ Pinkard contends that, because the corrosion was a progressive and continuous condition, coverage was triggered under each policy. We agree.

■ Since construction of the policies is a matter of law, this court is not bound by the trial court's interpretation. *Colard v. American Family Mutual Insurance Co.*, 709 P.2d 11 (Colo.App.1985).

■ Generally, liability policies, by their language, fall into one of two classifications with respect to the event which will trigger coverage. An "occurrence" type policy provides coverage if an injury-causing occurrence takes place within the policy period, irrespective of when a claim therefore may be presented. Therefore, a "claims made" or "discovery" type policy provides coverage only if a claim is presented during the policy period. *Annot.*, 37 A.L.R.4th 390 (1985).

■ All of the policies at issue here are "occurrence" type policies. Because all ambiguities in an insurance contract are to be construed against the insurer, the term "occurrence" is to be broadly construed in favor of the insured. *Colard v. American Family Mutual Insurance Co., supra.*

The pertinent clauses of all of the policies contain identical language. An "occurrence" is defined under the policies as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Thus, to be covered, property damage need not be the result of a sudden event, but can arise from a continuous process as long as the damage is unintended and unexpected and occurs during the policy period.

Property damage is defined under the policies to include "physical injury to or destruction of tangible property which occurs during the policy period." It is uncontested that the corrosion of the roof was a condition which unexpectedly and unintentionally caused continuous property damage from at least 1977 through 1984.

American relies on the following clause which appears in the policies as limiting its liability to the policy in effect at the time the corrosion manifested itself in the collapse of the roof:

"[P]roperty damage arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one **occurrence**."

American argues that situation at issue constitute one occurrence triggering coverage only when the roof collapsed. We agree that the damage arises from one continuous process. However, none of the language in the policies conditions coverage upon the resulting damages manifesting themselves during the policy period. Rather, coverage is provided if property damage occurs during the policy period.

Property damage here triggers coverage when actual damages are sustained. *See Samuelson v. Chutich*, 187 Colo. 155, 529 P.2d 631 (1974). Therefore, damage which begins in one policy period, and continues through several more, is but one occurrence.

When actual damages were sustained is difficult to assess in a situation in which, as here, the property damage occurred progressively over a period of time. Courts which have addressed situations of delayed ultimate damage have used either the "exposure" or the "manifestation" theory to determine when actual damages were sustained. Under the exposure theory, an insurer is liable for damages during any policy period in which there is exposure to a damage-causing condition or agent. The manifestation theory determines liability as of the time when ultimate injury occurs or becomes manifest. *See Annot.*, 37 A.L.R.4th (1985).

Under the facts at issue here, we conclude that the exposure theory is more appropriate. Although predominantly applied in asbestos cases involving progressive bodily injury, the exposure theory has been applied to cases dealing with property damage of the continuous and progressive type. *See CPS Chemical Co. v. Continental Insurance Co.*, 199 N.J.Super. 558, 489 A.2d 1265 (1984); *California Union Insurance Co. v. Landmark Insurance Co.*, 145 Cal.App.3d 462, 193 Cal.Rptr. 461 (1983); *Gruol Construction Co. v. Insurance Co. of North America*, 11 Wash.App. 632, 524 P.2d 427 (1974).

Here, the damage slowly progressed. And, although not immediately apparent, the evidence shows that progressive and continuous deterioration of the roof infected the integrity of the structure causing actual property damage during the respective policy periods. This fact pattern is distinguishable from a situation in which the manifestation theory is usually applied, *i.e.*, when tortious conduct sets in motion a process that ultimately causes injury after a period of dormancy. *Accord Prudential–LMI Commercial Insurance v. Superior Court*, 224 Cal.App.3d 389, 260 Cal. Rptr. 85 (1989); *see Samuelson v. Chutich, supra.*

The time of the discovery of the property damage does not determine when it took place. By the time the damage was obvious, it was widespread. It is undisputed that corrosion occurred during each policy period. Consequently, we conclude that there was an "occurrence" triggering coverage under each policy.

No issue is raised and we offer no opinion on the apportionment of damages to the various policy periods.

The judgment in favor of defendant is reversed, and the cause is remanded for such further proceedings as are appropriate.

HUME and MARQUEZ, JJ., concur.