**DAKHUE LANDFILL, INC., Appellant,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, Defendant,**

**The Travelers Indemnity Company, The Saint Paul Fire and Marine Insurance Company, Respondents.**

No. C0–93–905.

Court of Appeals of Minnesota.

Nov. 23, 1993.

Christopher J. Dietzen, Daniel W. Voss, Larkin, Hoffman, Daly & Lindgren, Bloomington, for appellant.

William J. Keppel, B. Andrew Brown, Michael A. Duffy, Dorsey & Whitney, Minneapolis, The Travelers Indem. Co.

Charles E. Spevacek, Stacy A. Broman, Meagher & Geer, Minneapolis, The Saint Paul Fire and Marine Ins. Co.

Michael Berens, Kelly & Berens, P.A., Minneapolis, Wiley, Rein & Fielding, Washington, DC, for amicus curiae Insurance Environmental Litigation Ass'n.

Considered and decided by ANDERSON, C.J., and FORSBERG and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Appellant challenges the district court's grant of summary judgment on its claim that its insurers must defend and indemnify it in proceedings for clean-up of groundwater contamination. We affirm.

## FACTS

The Dakhue Landfill opened for business in late 1971. After testing in 1983 revealed groundwater contamination, the Minnesota Pollution Control Agency (MPCA) sued Dakhue to compel clean-up of the contamination. Dakhue turned to its insurers for defense and indemnification of the MPCA claims. The insurers denied coverage, and Dakhue brought this declaratory judgment action. The district court granted summary judgment against Dakhue, leading to this appeal.

Dakhue Landfill, Inc., a Minnesota corporation organized in 1971, owned and operated the Dakhue Landfill in Dakota County, Minnesota. The landfill operated from late 1971 until May 31, 1988. During its operation, the landfill received mixed municipal

and commercial waste, as well as some industrial waste. The industrial waste brought to the landfill included treated railway ties, paint filters, shredded automobile interiors, waste chemicals, alar sludge, plastic waste, liquids with strong chemical odor, shredded metal, cleaning solvents and solvent-soaked cleaning rags, and paint.

The MPCA issued solid waste disposal facility permit SW–50 to Dakhue on October 1, 1971. In addition to the MPCA permit, Dakhue operated under a license from Dakota County. The MPCA permit required Dakhue to construct a separate hazardous waste disposal cell. This cell was never constructed.

During its operation, Dakhue purported to prohibit hazardous wastes. As most of the waste brought to Dakhue arrived in closed trucks, there was no way to check what was in the trucks before they entered the landfill. In addition, Dakhue's president, Larrimore Welt, testified that he did not know what constituted hazardous waste.

The main concern at the time Dakhue received its permit to begin landfill operations was the potential for environmental contamination by inorganic compounds, such as chlorides, nitrates, and metals. The possibility of contamination by volatile organic compounds was given little attention.

When Dakhue received its MPCA permit, MPCA officials believed the layer of soil between the bottom of the landfill and the groundwater would act as a filter and attenuate any contaminants in the leachate [1] leaving the site. In addition, it was believed keeping the waste dry by covering it on a daily basis would minimize leachate generation. This belief was based on the theory that a landfill would not release leachate until the landfill's contents reached field capacity.[2] Once field capacity is reached, any additional water in the landfill will cause a release of leachate. One of Dakhue's expert witnesses testified that leachate could be released before the landfill reached field capacity if there were channelized flow, which is liquid flow along seams in the waste mass that have reached field capacity.

Proper operation of a landfill was considered critical to prevention of groundwater contamination. The MPCA and Dakota County records relating to inspection of the landfill show frequent violations of MPCA regulations. Most of the violations related to inadequate daily cover and failure to control litter at the site. In addition, Dakhue had problems with water ponding on top of the garbage mass, inadequate fencing, and rats. Larrimore Welt was advised by letter of the result of each inspection, including the noted violations.

At one point, MPCA found some haulers had their own keys to the landfill and were dumping when the landfill was closed. Dakhue was ordered to retrieve the keys and limit dumping to times when the landfill was open. Dakhue also failed to test monitoring wells, as required by its MPCA permit. On May 22, 1980, Dakhue received a notice of noncompliance from MPCA listing Dakhue's permit violations.

In 1983, groundwater testing at the landfill site indicated the presence of volatile organic compounds. In 1985, contaminants were found in groundwater wells at the site. That year, the MPCA notified Dakhue of the agency's decision to include the landfill on Minnesota's permanent list of priorities, a list of hazardous waste sites that required remedial action. Dakhue was also notified that there would be further investigation into the groundwater contamination; Dakhue was named as a potentially responsible party for the cost of investigation and clean-up. On June 23, 1987, Dakhue and the MPCA signed a consent order providing Dakhue must investigate the contamination and conduct clean-up operations at the landfill site. After signing the consent order, Dakhue filed Chapter 11 bankruptcy. The bankruptcy action was later converted to a Chapter 7 liquidation.

---

1. The term "leachate" refers to the chemicals that are washed out of a landfill as water flows through the waste mass.

2. Field capacity is the maximum moisture content which a soil or solid waste mass can retain in a gravitational field without producing downward percolation.

Travelers issued five comprehensive general liability policies to Dakhue; these policies were in force from July 30, 1973 to July 30, 1978. The Travelers policies excluded liability coverage for

(1) bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant

(a) if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

Dakhue alleged St. Paul Fire had issued comprehensive general liability policies covering the period from July 30, 1978 through July 30, 1983. St. Paul Fire was unable to find a copy of the policy; however, for purposes of the summary judgment motion, St. Paul Fire accepted as accurate the copy produced by Dakhue. The St. Paul Fire policy for the period from July 30, 1978 to July 30, 1983 contained the following pollution exclusion:

This insurance does not apply:

*　　*　　*　　*　　*　　*

(e) To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

For the period from July 30, 1983 through July 30, 1985, the pollution exclusion in the St. Paul Fire policy was changed to read as follows:

**Pollution.** We don't cover injury or damage caused by the discharge, dispersal, release or escape of pollutants such as:

● smoke, vapor, soot or fumes;

● acids, alkalis, toxic chemicals, liquids or gases; or

● waste material or other irritants or contaminants.

But this exclusion won't apply to sudden accidents involving pollutants.

After July 30, 1985, the St. Paul Fire pollution exclusion was again changed to read:

**Pollution.** We won't cover claims that result from pollution. Nor will we cover claims that result from pollution caused by waste pollutants.

Dakhue is not claiming coverage under the post–1985 St. Paul Fire policies.

Dakhue indicated that John Lichter, a professional engineer with Bruce A. Liesch Associates, Inc., would testify

that environmental contamination was not expected or intended to occur as a result of operation of a sanitary landfill when Dakhue Landfill was begun.

At his deposition, Lichter testified that no *significant* contamination was expected from the operation of Dakhue Landfill. By "significant contamination," Lichter said he meant contamination that would result in "health related impacts or environmental impairment to some degree." At the time Dakhue Landfill began operations, it was believed that inorganic contamination would occur but that the contamination would be attenuated through the soil before the contaminants reached the groundwater.

John Elks, an MPCA staff hydrogeologist, testified that in his opinion, a release of leachate probably occurred at the Dakhue Landfill within the first few months of the commencement of operation in November of 1971. Elks based this opinion on two points: first, a general understanding of how landfills affect groundwater, including documentation that releases normally occur shortly after refuse is placed in landfills; second, the distance the leachate plume has traveled, given the groundwater characteristics at the site. Elks could not give a specific number of releases that have occurred at the landfill, nor could he pinpoint any one particular release and give a date when it occurred. According to Elks, the contamination of the groundwater at the landfill site was a continual occurrence and the available data do not permit isolation of discreet events of contamination at the landfill.

Dakhue's final expert was Ken Meyer, MPCA project manager for Dakhue, who testified that at the time Dakhue began operations it was believed that a properly operated landfill would not contaminate the groundwater. Shortly after Dakhue began operations, according to Meyer, MPCA staff believed that leachate would be produced at landfills and that the groundwater at many landfill sites would be contaminated.

Travelers and St. Paul Fire moved for summary judgment, which the district court granted, holding Dakhue's claims for coverage were barred by the pollution exclusion clauses of the policies.[3] Dakhue has appealed.

## ISSUES

1. Where an insurance policy exclusion takes away coverage, but an exception to the exclusion restores coverage in certain circumstances, does the insurer or the insured bear the burden of establishing the exception's applicability or nonapplicability?

2. Did the district court err in determining the policies' pollution exclusion clauses bar coverage?

## ANALYSIS

■ Summary judgment shall be granted when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. In reviewing a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court properly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Interpretation and construction of an insurance policy presents a question of law that the district court can properly determine on summary judgment and that this court reviews de novo on appeal. *Sylvester Bros. Dev. Co. v. Great Central Ins. Co.*, 480 N.W.2d 368, 372 (Minn.App.1992),

*pet. for rev. denied* (Minn. Mar. 26, 1992) (*Sylvester I*).

1. As noted earlier, we are not addressing whether the groundwater contamination at the landfill constitutes an occurrence. We address the issue of whether the policies issued by St. Paul Fire and Travelers provide coverage if the contamination is an occurrence.

Both policies contain pollution exclusion clauses. The St. Paul Fire policy contains a pollution exclusion, with an exception to the exclusion for release of pollutants that are "sudden and accidental." The district court imposed on Dakhue the burden of showing that the release was "sudden and accidental."

■ The burden of proving the applicability of an exclusion is on the insurer. *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). Courts are split on whether the insurer or the insured bears the burden of proof with respect to an exception within an exception. *See* 19 Mark S. Rhodes, *Couch on Insurance* 2nd § 79:385 at 338 (rev. ed. 1983).

Courts that require the insurer to disprove the "sudden and accidental" exception to the pollution exclusion reason that the insurer's burden of establishing the applicability of the exclusion includes establishing the nonapplicability of the exception to the exclusion. *See United States Fidelity & Guar. Co. v. Morrison Grain Co., Inc.*, 734 F.Supp. 437, 443 (D.Kan.1990). Courts that require the insured to establish the "sudden and accidental" exception to the pollution exclusion reason that the exception is a form of coverage, and the insured bears the duty of establishing this coverage. *See Fischer & Porter Co. v. Liberty Mut. Ins. Co.*, 656 F.Supp. 132, 140 (E.D.Pa.1986).

■ Under the St. Paul Fire policy, (1) there is coverage for unintended damages, but (2) the damages are excluded from cover-

**3.** The court also determined there had been no occurrence because the contamination was expected to occur, Dakhue's experts lacked sufficient foundation for their opinions, the Travelers policy's violation-of-government-regulation exclusion barred Dakhue's claims and any property

damage was not accidental. The parties have addressed all of the district court's reasons for granting summary judgment; however, we find the pollution exclusions dispositive and limit our analysis to those exclusions.

age if they result from the release of pollutants, unless (3) the release was sudden and accidental. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156–57 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992). We believe the initial burden of showing coverage is the insured's. If the insured establishes that there is coverage under the policy, the burden shifts to the insurer to establish that an exclusion takes away that coverage. When the insurer shows that an exclusion takes away coverage, the burden returns to the insured to show that an exception to the exclusion restores coverage. The district court properly kept the burden of establishing coverage on Dakhue.

2. In the St. Paul Fire policy, the word "sudden," as used in the sudden and accidental exception to the pollution exclusion, has a temporal connotation, requiring that

> the incident at issue occurs relatively quickly rather than gradually over a long period of time.

*Sylvester I*, 480 N.W.2d at 375. The court in *Sylvester I* determined that there were numerous fact issues regarding whether the release was sudden and accidental and, accordingly, summary judgment was inappropriate. *See id.* at 377. On remand, the district court again granted summary judgment in favor of the insurers, concluding, as a matter of law, that the release in question was not sudden and accidental. On appeal, this court affirmed. *See Sylvester Bros. v. Great Central Ins. Co.*, 503 N.W.2d 793 (Minn.App.1993), *pet. for rev. denied* (Minn. Sept. 30, 1993) (*Sylvester II*).

▌ In the present case, as in *Sylvester II*, the contaminants have been leaking into the groundwater for over 20 years. The testimony of Dakhue's expert witness, Kenneth Olson, shows that the facts of the release in the present case are similar to the release in *Sylvester II*. In Olson's opinion, releases of leachate occurred shortly after the landfill opened and occurred continually but sporadically since then.

Under these circumstances, there is no coverage under the St. Paul Fire policy. According to Dakhue's own experts, leachate was released within months of the landfill's opening in 1971. Releases of pollutants that extend over two decades cannot be considered "sudden" under any reasonable interpretation of the word.

This court has recently determined as a matter of law that where pollutants take from one to thirteen years to travel from the landfill to the groundwater, the release cannot be considered sudden as a matter of law. *Krawczewski v. Western Casualty & Surety Co.*, 506 N.W.2d 656 (Minn.App.1993).

St. Paul Fire contends that this court should reconsider its conclusion in *Sylvester I* that the escape of pollutants from a landfill into the groundwater is the triggering event for determining insurance coverage. In *Krawczewski*, this court reaffirmed the holding in *Sylvester I* that the release of pollutants into the groundwater is the appropriate triggering event, stating:

> As long as the contaminants were in the soil, the only damage was to the insured's own property, which is excluded from coverage under the policies. As in *Sylvester I*, there was no release until the contaminants left the insured's property and entered the ground water, which is the property of a third party, the state. This was the injury-in-fact which would have triggered any coverage under the policies.

*Krawczewski*, 506 N.W.2d at 659.

Dakhue contends that the releases into the groundwater were a series of discreet and sudden events. In *Sylvester II*, this court rejected the argument that such an analysis is appropriate, stating

> under that theory all releases would be sudden. "[O]ne can always isolate a specific moment at which pollution actually enters the environment." *Ray Indus., Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 768 (6th Cir.1992).

> Under the operator's suggested approach, the "sudden and accidental" exception essentially would swallow the "rule" of the pollution exclusion clause that pollution is not covered.

*Sylvester II*, 503 N.W.2d at 797; *see also Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 938 F.2d 1423, 1428 (1st Cir.1991)

("micro-analysis of a continuous pattern of pollution [is] \* \* \* a well-meaning but ill-fated effort to distinguish between virtually indistinguishable occurrences"), *cert. denied* —— U.S. ——, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992). The district court correctly concluded the St. Paul Fire policies exclude coverage for the claims brought against Dakhue.

The Travelers policy raises a different issue. It excludes coverage for bodily injury or property damage arising out of any release of pollutants if the release is expected or intended from the standpoint of the insured. Unlike the St. Paul Fire pollution exclusion, the Travelers exclusion does not contain an exception. The district court held this exclusion was applicable because (1) Dakhue expected and intended the discharge of wastes into the landfill and (2) Dakhue expected a release from the landfill into the surrounding environment.

■ With respect to the first stated reason, the district court erred. The relevant event for determining what constitutes a "release" is the escape of contaminants from the landfill. *Sylvester I,* 480 N.W.2d at 373–74. The fact that the insured expected and intended the deposit of wastes into the landfill does not require a conclusion that the Travelers exclusion is applicable. Placing garbage into a landfill is not a release from the standpoint of the landfill operator. It is the release of leachate from the landfill that caused harm to a third party's property, and it is the migration of pollutants from where they are supposed to stay that constitutes a release from the standpoint of the insured. *See Krawczewski,* 506 N.W.2d at 659.

■ In determining whether Dakhue expected or intended any release of pollutants from the landfill, we apply the objective standard of what a reasonable insured should have known. *See Sylvester I,* 480 N.W.2d at 372. Applying that standard, we hold Dakhue expected the release of leachate from the landfill. Dakhue was required to test for groundwater contamination, an indication that pollution was a possibility. On April 7, 1975, MPCA sent a letter to Dakhue stating:

> The groundwater monitoring program established at your landfill is your responsibility for checking against groundwater contamination due to improper landfill operations.

Despite this clear warning that improper operation of Dakhue could lead to groundwater contamination, Dakhue was frequently found to be in violation of the terms of its MPCA permit, especially with respect to daily cover of the waste.

By 1973, the MPCA recognized that the soil under landfills would not filter contaminants out of leachate. The MPCA expected that groundwater contamination would occur at many landfill sites across the state. As a result of this expectation, the MPCA's solid waste rules governing Dakhue's operations were revised in 1973.

Larrimore Welt, Dakhue's president, attended landfill seminars held by the MPCA and received an MPCA newsletter sent to landfill operators. He was aware of the groundwater testing requirements of Dakhue's permit. If Dakhue was unaware of the MPCA's expectation that pollutants would be released from landfills, that lack of knowledge was of its own making. A reasonable insured would have been aware of the MPCA's expectations of release.

Dakhue's own expert witnesses testified regarding MPCA expectations. Although Larrimore Welt testified Dakhue did not expect any release of pollutants from the landfill, the subjective expectations of the insured do not determine whether a release was expected. It is unreasonable to claim that no release was expected when every piece of evidence shows otherwise. When Dakhue was first licensed, releases were expected; the resulting damage was expected to be insignificant. The release, however, is the focus of the exclusion. A release was expected as a matter of law, and the Travelers policy provides no coverage.

Finally, Dakhue has included in its brief and appendix excerpts from a liability manual issued by Travelers to its own personnel regarding the pollution exclusion contained in the Travelers policy. The manual was not introduced in the district court, and Travelers moves to strike the references to the manual contained in Dakhue's brief. This

court cannot base its decision on matters outside the record. *Brandenberg v. Auto–Owners Ins. Co.*, 352 N.W.2d 97, 100 (Minn. App.1984). The liability manual is not part of the record and is therefore stricken.

## DECISION

Dakhue failed to show the release of pollutants was sudden; accordingly, the St. Paul Fire policy does not provide coverage. As a matter of law, Dakhue expected the release of pollutants, and the Travelers policy provides no coverage.

**Affirmed.**