**BELL LUMBER AND POLE COMPANY, Plaintiff,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Continental Casualty Company, The Hartford Accident and Indemnity Company, Liberty Mutual Insurance Company, Westchester Fire Insurance Company and Centennial Insurance Company.**

**Civ. No. 4–89–931.**

United States District Court, D. Minnesota, Fourth Division.

May 26, 1994.

Thomas Charles Mielenhausen, Bryan Lee Crawford, Steven Alan Mogck, James A. Mennell, Popham Haik Schnobrich & Kaufman, Minneapolis, MN, for plaintiff.

Kathryn L. Quaintance, Andrew Walter Horstman, Stephen H. Cohen, Richard William Bale, Robins Kaplan Miller & Ciresi, Jordan Matthew Lewis, Siegel Brill Greupner & Duffy, Minneapolis, MN, Wendy S. Greengrove, McElroy Deutsch & Mulvaney, Samuel J. Samaro, Morristown, NJ, for U.S. Fire Ins. Co.

Ruth S. Marcott, Gordon J. Apple, Garrett E. Mulrooney, Maun & Simon, St. Paul, MN, for Home Ins. Co.

William James Keppel, B. Andrew Brown, Dorsey & Whitney, Minneapolis, MN, for Travelers Indem. Co.

Robert Edward Salmon, Bradley Mitchell Jones, Stacy A. Broman, Meagher & Geer, Minneapolis, MN, for Continental Cas. Co.

Richard J. Chadwick, Chadwick Johnson & Condon, Minneapolis, MN, for Hartford Accident and Indem. Co.

James P. Whitters, III, Gaston & Snow, Boston, MA, Austin Dowling Ditzler, Ditzler Law Office, Minneapolis, MN, Lee H. Glickenhaus, Mintz Levin Cohn Ferris Glovsky & Popeo, Bert H. Ware, Boston, MA, for Liberty Mut. Ins. Co.

John F. Angell, Scott Patrick Drawe, Louise A. Behrendt, Stich Angell Kreidler & Muth, Minneapolis, MN, for Centennial Ins.

## ORDER

DOTY, District Judge.

This matter is before the court on the joint motion of defendants United States Fire Insurance Company ("U.S. Fire") and Westchester Fire Insurance Company ("Westchester") for summary judgment. Bell Lumber and Pole Company ("Bell Lumber") brought suit seeking to hold various insurers responsible for certain costs and future costs related to pollution damage. U.S. Fire and Westchester contend that their liability insurance policies do not cover Bell Lumber's pollution-related claims.

The court heard oral argument on defendants' motion on April 1, 1994. Upon Bell Lumber's request, the court agreed to refrain from ruling on the motion until the Minnesota Court of Appeals rendered a decision in *SCSC Corp. v. Allied Mut. Ins. Co.*, No. C2–93–1408. On April 26, 1994, the Minnesota Court of Appeals issued its decision. Consequently, the pending motion is now ripe for adjudication. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants defendants' motion for summary judgment.

## BACKGROUND

The facts of this case are set forth in the court's order dated March 21, 1994, and need not be repeated. That order granted sum-

mary judgment in favor of defendants Continental Casualty Company and Centennial Insurance Company based on issues identical to ones raised here. U.S. Fire provided comprehensive general liability insurance to Bell Lumber between May 19, 1975 and November 1, 1987. Westchester provided comprehensive catastrophe (umbrella) liability to Bell Lumber during the same period. U.S. Fire and Westchester argue that the contamination of the soil and the groundwater at Bell Lumber's site was not the result of an "occurrence" within the meaning of the policies. Defendants also argue that coverage is precluded by qualified pollution exclusions which bar coverage for damage caused by the release of pollutants unless the release was both "sudden and accidental."

## DISCUSSION

The court applies the well-known standard for summary judgment. *See* Fed.R.Civ.P. 56(c). The interpretation and construction of an insurance policy presents a question of law that the court can properly determine on summary judgment. *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 375 (Minn.Ct.App.1992) ("*Sylvester I* "). Bell Lumber has the initial burden of establishing a prima facie case of coverage. *Dakhue Landfill, Inc. v. Employers Ins. of Wausau,* 508 N.W.2d 798, 803 (Minn.Ct.App.1993). The burden then shifts to the insurers to prove the applicability of an exclusion to coverage. *Id.* The burden returns to Bell Lumber to show that an exception to the exclusion restores coverage. *Id.*

■ The policies issued by U.S. Fire and Westchester provide coverage for property damage caused by an "occurrence", which is defined as:

an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The parties dispute whether the contamination of the soil and groundwater at Bell Lumber's site was the result of an "occur-

rence." The court addressed this issue in its order dated March 21, 1994, and incorporates that discussion here. For the reasons stated in that order, the court concludes that the contamination caused by Bell Lumber's disposal practices did not result from an "occurrence" within the meaning of the policies. The court also holds that a reasonable jury could find that the contamination under Bell Lumber's process area resulted in property damage "neither expected nor intended from the standpoint of the insured."

■ The policies issued by defendants also exclude coverage for damages arising out of polluting activities, unless the release of pollutants was sudden and accidental. The relevant policy language provides:

This insurance does not apply:

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Bell Lumber argues that the exclusion does not apply because sudden and accidental boilovers and overfills from its treatment tanks caused the contamination under its process area. Bell Lumber bears the burden of showing the sudden and accidental exception applies.

In the order dated March 21, 1993, this court noted that the Minnesota Court of Appeals has consistently held that the term "release" in the pollution exclusion refers to the entry of contaminants into the groundwater 847 F.Supp. 738. The cases cited by this court involved landfills.[1] In *Sylvester I,* the Minnesota Court of Appeals noted that landfills were designed to contain pollutants and prevent them from reaching the underlying groundwater. *See* 480 N.W.2d at 373. That court held that "the deposit of pollutants into a landfill cannot be considered the triggering event; rather, the 'escape' is the critical in-

---

1. The court cited *Dakhue,* 508 N.W.2d at 803, *Krawczewski v. Western Cas. & Surety Co.,* 506 N.W.2d 656, 659 (Minn.Ct.App.1993) and *Sylvester I,* 480 N.W.2d at 375.

quiry for determining the applicability of the pollution exclusion." *Id.* at 373–74 (citations omitted).

The landfill operator in *Sylvester I* punctured the drums and allowed the waste contents to drain onto the ground before covering the drums with soil. In *Krawczewski,* sealed barrels were buried in a landfill with the intent that the contents would not be released from the barrels. Because the barrels were accidentally punctured, the insured tried to distinguish *Sylvester I* and argued that the relevant release occurred when the contents left the barrels. The appellate court rejected the argument, stating:

> Regardless of whether the barrels were deliberately or accidentally punctured, there was no covered property damage until the pollutants damaged a third party's property. As long as the contaminants were in the soil, the only damage was to the insured's own property, which is excluded under the policies. As in *Sylvester I,* there was no release until the contaminants left the insured's property and entered the ground water, which is the property of a third party, the state. This was the injury-in-fact which would have triggered any coverage under the policies.... Also it is the injury-in-fact which invokes consideration of the exclusion clauses.

506 N.W.2d at 659 (citations omitted) (quoted with approval in *Dakhue,* 508 N.W.2d at 803).

In *SCSC Corp.,* a panel of the Minnesota Court of Appeals drew a distinction between landfill cases and other pollution cases in determining the relevant release for purposes of the pollution exclusion. The court stated that:

> Landfills were built on the assumption that the ground under the waste mass would be able to hold pollutants in suspension above the groundwater. For this reason, the relevant release was deemed to occur when pollutants leaked out of the soil under a landfill and into the groundwater. [The

landfill] cases are distinguishable. This case does not involve a landfill and SCSC made no attempt to store perc, suspended in the soil, above groundwater.

*SCSC Corp. v. Allied Mut. Ins. Co.,* 515 N.W.2d 588, 598 (Minn.Ct.App.1994) (citations omitted). Bell Lumber urges this court to follow the distinction drawn in *SCSC Corp.* The court declines to do so, however, because the decision ignores the inextricable link between the injury-in-fact which triggers coverage and the relevant release for purposes of the pollution exclusion.

Minnesota courts apply the actual injury rule. *Industrial Steel Container Co. v. Fireman's Fund Ins. Co.,* 399 N.W.2d 156, 159 (Minn.Ct.App.1987). Under that rule, injury occurs and coverage is triggered when property is damaged. *Id.* In *SCSC Corp.,* the court recognized that the trigger of insurance coverage was property damage during the policy period. The court held that the injury-in-fact which triggered liability on the part of SCSC was the entry of perc into the groundwater. *SCSC Corp.,* 515 N.W.2d at 595–96.[2] However, the court overlooked the relation between the injury-in-fact which triggers coverage and the relevant release for purposes of the pollution exclusion. The oversight is not surprising given the insurers position at trial that the relevant release was the escape from confinement of the perc, rather than the resulting property damage. The appellate court correctly held that the insurers could not later be heard to complain that the trial court accepted their argument. *Id.* at 598–99.

Interpretation of the pollution exclusion, however, cannot be divorced from the concept of insurance coverage. Insurance coverage is triggered only when the property of another is damaged. The injury-in-fact which triggers insurance coverage also invokes consideration of the exclusion clauses. Thus, regardless of the type of pollution case, the relevant release occurs when the pollu-

---

**2.** SCSC distributed a chemical known as perc to dry cleaners. In August 1977, a truck driver for SCSC was filling the tank of a delivery truck when the tank overfilled and perc sprayed into the driver's eyes. Perc continued to flow out of the tank for a few minutes and it was estimated that 20 to 30 gallons of perc spilled. Although the injury was not discovered for a number of years, the court concluded that the evidence was sufficient to allow a jury to find that perc entered the groundwater, causing property damage and triggering coverage, in August 1977.

tants leave the insured's property and damage a third party's property.[3] The injury-in-fact which triggered liability on the part of Bell Lumber was the entry of penta into the groundwater, not the boilovers and overfills from its treatment tanks. The entry of penta into the groundwater is also the relevant release for purposes of the pollution exclusion. The release of penta into the groundwater below Bell Lumber's property occurred over many years. Releases into the groundwater taking place gradually over a long period of time cannot reasonably be construed to be sudden.

### CONCLUSION

The court concludes that the contamination caused by Bell Lumber's disposal practices did not result from an "occurrence" within the meaning of the policies. The court also holds that there was no release for purposes of the pollution exclusion until the contaminants left Bell Lumber's property and entered the groundwater. The release of contaminants into the groundwater took place gradually over a long period of time and cannot reasonably be construed as sudden. Thus, the court concludes that Bell Lumber is not entitled to coverage for contamination in its process area due to the operation of the qualified pollution exclusion. The court need not reach the other grounds asserted by defendants in support of summary judgment.

Accordingly, **IT IS HEREBY ORDERED** that the motion of defendants United States Fire Insurance Company and Westchester Fire Insurance Company for summary judgment is granted. The court, finding there is no just reason for delay, directs that **JUDGMENT BE ENTERED** as to defendants United States Fire Insurance Company and Westchester Fire Insurance Company pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

---

**3.** Given the position the insurers took at trial and the law of the case in *SCSC Corp.*, the court need not determine whether the decision is inconsistent with *Krawczewski* and *Dakhue*. If the decisions are deemed inconsistent, the court believes that the Supreme Court of Minnesota would follow the reasoning enunciated in *Krawczewski*.