Perry BROWDER; Alice Browder and the Water Wheel Partnership, a Colorado General Partnership, Petitioners,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Respondent.

No. 93SC770.

Supreme Court of Colorado, En Banc.

April 10, 1995.

Wolf & Slatkin, P.C., Jonathan L. Madison, Denver, Arnold & Arnold, Jean C. Arnold, Littleton, for petitioners.

Vanatta, Sullan & Sandgrund, P.C., Ronald M. Sandgrund, Englewood, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

In *Browder v. United States Fidelity & Guaranty Co.*, 873 P.2d 16 (Colo.App.1993), the court of appeals affirmed the district court's entry of summary judgment in favor

of United States Fidelity & Guaranty Company (USF & G). We granted certiorari to determine whether it erred in holding that Perry and Alice Browder (Browders), as subrogees, may not recover under a multi-peril insurance policy when damage to the Browders' property occurred prior to the time they purchased the property. We affirm.

### I

In February 1975, USF & G sold a special multi-peril insurance policy (SMP policy) to the Fletcher Corporation (Fletcher), the owner and general contractor of a motel. The policy was in effect from February 17, 1975, to April 30, 1976. On April 30, 1976, Fletcher sold the motel and assigned the SMP policy to the Browders.

In 1985, the Browders discovered severe cracks in the motel building and sued Fletcher for failure to construct the motel in a workmanlike manner. Fletcher filed for Chapter 7 bankruptcy protection shortly before trial, thereby staying the lawsuit.

The Browders filed a proof of claim with the bankruptcy court and commenced an adversary proceeding against Fletcher. The parties entered into a Stipulation for Recovery and for Dismissal and a judgment, which they have been unable to recover, was entered in favor of the Browders for $572,000 on their claim for negligence. The Browders then sued USF & G seeking to recover under the SMP policy on indemnification and assignment theories. They did not sue as insureds but sought recovery as injured third parties, claiming their losses were covered by the policy and that they became subrogated to Fletcher's rights.

The trial court granted USF & G's motion for summary judgment. It found that the Browders' losses were based on the claim that Fletcher negligently constructed the motel and that such a claim is not a covered loss under the policy because it did not arise out of the ownership, maintenance or use of the motel. It held that the policy covered only losses suffered by third parties arising out of

Fletcher's operation of the motel.[1] It also held that no loss occurred during the relevant policy period because the Browders did not experience any damages earlier than April 30, 1976, when they took title at which time Fletcher was no longer the insured.

The court of appeals affirmed, finding the Browders were not third parties at the time they allege their damages accrued and therefore, could not collect as subrogees under the SMP policy for damages occurring when Fletcher was the insured. *Browder v. United States Fidelity & Guar. Co.*, 873 P.2d 16 (Colo.App.1993). Holding that there was a definitive break between the liability coverage available to Fletcher as an insured and the time when the Browders could have sustained any property damage, the court held the Browders did not suffer any loss during the relevant policy period and, therefore, there was no occurrence which could have triggered coverage.

### II

 The interpretation of the terms of an insurance policy is based upon principles of contract interpretation. *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991). Ambiguous language must be construed in favor of the insured and against the insurer who drafted the policy. *Id.* Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. *Id.*

 The present case involves a "multi-peril insurance policy." Under the unambiguous terms of the policy, insureds are covered for damage to their property in certain isolated situations and are covered for liability from bodily injury and property damage to third parties in numerous situations. The Browders have asserted claims as third parties in this case in order to recover under the broader "property and bodily injury" liability provisions of the insurance contract.

The SMP Policy provides the following liability coverage:

---

1. The court gave some examples of a covered loss: a motel guest slipping on a negligently maintained floor or a guest tripping over a crack caused by the negligent construction of the motel.

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises....

The policy defines an occurrence as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Property damage means "injury to or destruction of tangible property."

Because of the specific language of the policy, this type of liability insurance is characterized as an "occurrence" policy. Occurrence policies protect an insured against claims "made by third parties based upon occurrences within the policy period that result in injury to their (the third parties') property interest." *Hoppy's Oil Serv. v. Insurance Co. of N. Am.,* 783 F.Supp. 1505, 1508 (D.Mass.1992).

A

The Browders argue that an occurrence policy does not require they personally suffer harm or have an interest in the property damaged during the policy period. They place reliance on *American Employer's Insurance Co. v. Pinkard Construction Co.,* 806 P.2d 954 (Colo.App.1990), to support their position that by itself, the damage to the motel triggered coverage. We disagree.

*Pinkard* involved an insurer who brought a declaratory action to determine its indemnity obligations under a number of successive liability insurance policies held by an insured. The insured installed a roof on a school district-owned building which began to corrode immediately upon its installation and later collapsed.

The insured argued that because the damage was progressive and continuous, coverage was triggered under each of the successive policies purchased, from the time he installed the roof to its collapse, rather than only under the policy in effect when the damage became manifest, as the trial court held. The policy in *Pinkard* was an occurrence policy which the court found provided coverage where "an injury-causing occurrence takes place within the policy period, irrespective of when a claim therefore may be presented." 806 P.2d at 955. The court held that coverage was provided where property damage occurs during the policy period and "[p]roperty damage here triggers coverage when actual damages are sustained." *Id.* at 955–56.[2] The court found the progressive and continuous corrosion of the roof caused actual damage, occurring in each of the policy periods and concluded "there was an 'occurrence' triggering coverage under each policy." *Id.* at 956.

The Browders interpret *Pinkard* to hold that a policy provides coverage so long as the property is damaged during the policy period. This analysis is correct only in part, for it disregards the basic tenet of liability insurance that a third party must suffer actual damage within the policy period to recover under a liability policy.[3]

Indeed, *Pinkard* is in accord with this well-established principle. 806 P.2d at 955; *see also Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974). However, unlike *Pinkard* where a third-party school district suffered damages to its property during the policy period, here, the continuous decomposition of the motel caused actual damage to Fletcher, the insured, during the policy period. The Browders did not experience any actual damage from the faulty construction

---

2. It is well-settled that the time of the occurrence of an accident is not the time the wrongful act was committed but the time when the complaining party was actually damaged. *Bartholomew v. Insurance Co. of N. Am.,* 502 F.Supp. 246, 252 (D.R.I.1980), *aff'd,* 655 F.2d 27 (1st Cir.1981); 11 George J. Couch, *Couch on Insurance 2d (Rev. ed.)* § 44.8 (1982).

3. "Liability insurance is sometimes called 'third party' insurance because it does not recompense the insured for his own loss." Rowland H. Long, *The Law of Liability Insurance* § 1.01 (1994). "Instead, liability insurance protects the insured against damages which he may be liable to pay to other persons by virtue of his own actions." *Id.*

until they purchased the property. Thus, any liability Fletcher may have had for damages to the Browders would not have been triggered until the policy was no longer in effect.

## B

The Browders also rely heavily on cases from other jurisdictions to suggest they need not personally incur damage during the policy period. *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993); *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990). We find these cases unpersuasive and distinguishable from the case before us.

In *Tufts University*, Tufts sought a declaration that its insurers should defend it against a liability claim for clean up of environmental damage to land owned by a subsidiary of Tufts. The insurers argued the proper inquiry was not whether property damage occurred during the policy period but whether the entity making the claim sustained harm during the policy period. 616 N.E.2d at 72. The court rejected this argument and found the plain language of the policy did not require the entity making the claim to own the property. *Id.* The court reasoned that "an objectively reasonable insured, reading the relevant policy language would expect to be covered" and had the insurers intended such a exclusion they could have so expressed in the written policy. *Id.*

We find the reasoning in *Tufts University* unpersuasive. Although the policy does not expressly require that the Browders *own* the property during the policy period, the Browders must have some legally recognizable injury to their interests during the policy period in order to recover. The Browders sustained no injury to their interest until they owned the motel property. When they became the owners, Fletcher immediately ceased to be the named insured pursuant to the assignment of the policy at the time at which it transferred title. Therefore, no occurrence that would trigger coverage under

the policy damaged their third party interest while Fletcher was the insured.

## III

■ Furthermore, even if property damage alone triggered coverage, the "owned property exclusion" prevents the Browders' recovery.

The SMP policy in this case contains standard exclusions which remove certain injuries or damages from coverage. Exclusion (k)(1) of the policy, known as an "owned property exclusion," expressly bars coverage for damage to the insured's property and states, "[t]his insurance does not apply . . . to property damage to property owned or occupied by or rented to the insured." The express language of the SMP policy, therefore, excludes coverage for any damage to the motel during the effective policy period, as the motel was owned by Fletcher at that time.

We find the Browders' reliance upon *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990), to be misplaced as the case is distinguishable from the circumstances at hand. In *Garriott*, the claimant unknowingly purchased damaged property adjacent to land owned by the insured after the insured's policy expired. The California Court of Appeals vacated the order granting summary judgment to the insurer and held that the policies "do not expressly require that the eventual claimant own the property at the time the property is damaged . . . they merely require the 'physical injury to . . . tangible property' take place during the policy period." *Id.* 270 Cal.Rptr. at 682. However, the court expressly recognized the property could not belong to the insured. *Id.* ("[n]owhere do the policies say to whom the property must belong save that it must not belong to the insured").

■ The claimant in *Garriott* purchased the land from a previous owner, who sustained damage to the property during the policy period. The claimant thus had a possible subrogated right to pursue an action against the insurer.[4] As we have stated, the

---

4. Subrogation occurs when one person is substituted in the place of another with reference to a

Browders themselves had no valid claim arising during the policy period. However, they could conceivably step into the shoes of a party, who had a valid claim during the time the liability policy was in effect, and recover as subrogees. The only party sustaining damage during the policy period was Fletcher and he is expressly precluded from asserting a claim against USF & G under the liability coverage due to the owned property exclusion clause.[5] Thus, the Browders' potential coverage as subrogees is also expressly excluded by the policy.

The decisions in *Hoppy's Oil Service, Inc. v. Insurance Co. of North America,* 783 F.Supp. 1505 (D.Mass.1992), and *Bell Lumber and Pole Co. v. United States Fire Insurance Co.,* 853 F.Supp. 315 (D.Minn.1994), further support our conclusion in this case.[6]

As here, the property owners in *Hoppy's Oil* argued that an SMP policy only requires damage to property and not actual damage to the claimant.[7] 783 F.Supp. at 1508. The court held that occurrence policies provide coverage for third party claims when an occurrence within the policy period has injured the third party's interests. The court found "an 'occurrence' is property damage during the policy period, a predicate that cannot be abstracted from ownership of the property particularly in view of the policy exclusion for 'property damage to (1) property owned or occupied by or rented by the insured'...." *Id.* Cf. *Johnson v. Studyvin,* 828 F.Supp. 877, 882 (D.Kan.1993) (adopting *Hoppy's Oil* holding that generally damage occurring prior to ownership of the injured property does

not trigger coverage unless policy states otherwise).

Likewise in *Bell Lumber and Pole,* the court found interpretation of exclusions cannot be divorced from the concept of insurance coverage. The court stated, "[i]nsurance coverage is triggered only when the property of another is damaged. The injury-in-fact which triggers insurance coverage also invokes consideration of the exclusion clauses." 853 F.Supp. at 318.

Here, the Browders' injuries arose only after they became the owners of the property and after Fletcher assigned the policy to them. They had no third party injury during the policy period and any possible subrogated claim arising from damage to the motel is precluded by the owned property exclusion.

## IV

We find the Browders did not sustain actual damage to their property during the applicable policy period and therefore no insurance coverage was triggered under the USF & G SMP policy. Even assuming that coverage exists under the policy, the Browders cannot recover as subrogees due to the owned property exclusion which prevents Fletcher from maintaining any claim against USF & G to which the Browders could be subrogated. We affirm the court of appeals.

ERICKSON, J., specially concurs.

Justice ERICKSON specially concurring:

The Fletcher Corporation (Fletcher) was the general construction contractor and own-

lawful claim, demand or right of the other in relation to the debt or claim and its rights, remedies or securities. *Black's Law Dictionary* 1427 (6th ed. 1990). The rights of a subrogee are the same and no greater than those of the person for whom he is substituted. "For it is elementary that one cannot acquire by subrogation what another whose rights he claims he did not have." *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947).

5. The court in *Trustees of Tufts Univ. v. Commercial Union Ins. Co.,* 415 Mass. 844, 616 N.E.2d 68 (1993), was also faced with an "owned property exclusion" but avoided the difficulty presented here by finding that a subsidiary of Tufts owned the property. *Id.* 616 N.E.2d at 74. Because Tufts owned only the stock in the subsid-

iary and not its property, the owned property exclusion in the policy did not preclude the court's result. Here, Fletcher owned the property when it was damaged and, therefore, the exclusion prevents coverage under the policy.

6. Although these two cases involved the interpretation of pollution exclusions in an SMP policy rather than owned property exclusions, we find the discussion of the basic principles of insurance law applicable to this case.

7. The SMP policy at issue was an occurrence policy which defined property damage as "physical injury to or destruction of tangible property which occurs during the policy period." *Hoppy's Oil,* 783 F.Supp. at 1507.

er of the Water Wheel Inn Motel. The United States Fidelity and Guaranty Co. (USF & G) issued a special multi-peril (SMP) casualty insurance contract to Fletcher in February 1975. The SMP policy provided in coverage C that:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business* of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage. . . .
>
> This insurance does not apply
>
> (a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner*[.]
>
> . . . .
>
> For the purpose of determining the limit of the Company's liability, all bodily injury and *property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.*

(Emphasis added.) The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Fletcher completed construction of the Water Wheel Inn in July 1975. The Browders purchased the motel from Fletcher in April 1976 and obtained an assignment of Fletcher's coverage under the SMP policy.

In January 1985, the Browders discovered that one of the buildings was cracking and sagging. After discovering cracking in another building in 1986, the Browders sued Fletcher for failure to construct the motel in a workmanlike manner. Fletcher filed for bankruptcy and the Browders filed a proof of claim that resulted in a stipulated judgment of $572,000. No assets exist in the bankrupt Fletcher estate to satisfy the judgment. No claim has been made against Fletcher or Browder that any injuries occurred as a result of the ownership, maintenance, or use of the motel.

As the owner of the property, Fletcher could not have brought an action against USF & G under the SMP policy. If the Browders sued as a subrogee, they would only acquire the rights of Fletcher. The SMP policy did not provide coverage to Fletcher for negligence in the construction of the building.

Accordingly, I would affirm the summary judgment entered in favor of USF & G.