Mike A. LEPRINO, Plaintiff–Appellant,

v.

**NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY and Nationwide Mutual Insurance Company, Defendants–Appellees.**

No. 02CA1863.

Colorado Court of Appeals, Div. IV.

Nov. 6, 2003.

488

Certiorari Denied May 10, 2004.*

* Chief Justice MULLARKEY would grant as to the following issue:

Whether the underlying complaint read as a whole sufficiently alleged facts of an "occurrence" under the CGL insurance policy to trigger the insurers' duty to defend.

Grimshaw & Harring, P.C., William J. Brady, Lisa K. Mayers, Denver, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., William L. Senter, Nicole S. Gellar, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge VOGT.

In this action arising out of the denial of insurance coverage, plaintiff, Mike A. Leprino, appeals the trial court's summary judgment in favor of defendants, Nationwide Property and Casualty Insurance Company and Nationwide Mutual Insurance Company. We affirm.

Plaintiff, a real estate developer, was one of several parties sued in 1998 by a group of homeowners who alleged that they had suffered damage because of unstable soil conditions under their homes. Plaintiff sent notice of the homeowners' claims to his insurers, including defendants, who had issued a series of commercial general liability and commercial umbrella liability insurance policies to him between 1986 and 1993.

Defendants declined to provide a defense or indemnity because the homeowners were not alleging property damage during the policy periods. Plaintiff's other insurers, who had policies in effect after 1993, provided a defense in the homeowners' action, and the homeowners' claims were ultimately settled.

Plaintiff then filed this action, seeking a declaratory judgment and damages for breach of contract and bad faith. Defendants moved for summary judgment. The trial court granted the motion, finding that the facts were not disputed and that there was no coverage for plaintiff under defendants' policies.

## I.

Plaintiff contends that the allegations of the homeowners' complaint triggered defendants' duty to defend and that the trial court therefore erred in entering summary judgment on his claims. We disagree.

### A.

We review a summary judgment de novo, using the same standards that govern the trial court's determination. Thus, we uphold summary judgment only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

 We likewise review de novo the trial court's construction of an insurance contract, applying well settled principles of contract interpretation. Absent evidence in the policy of a contrary intent, we give words in an insurance policy their plain and ordinary meaning. We may not rewrite policy provisions that are clear and unambiguous, and we may neither add provisions to extend coverage beyond that contracted for nor delete them to limit coverage. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294 (Colo.2003); *see also Compass Ins. Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999).

A liability insurer's duty to defend its insured against pending claims is broader than its duty to indemnify, which refers to its obligation to satisfy a judgment entered against the insured. The duty to defend is determined by an examination of the allegations in the underlying complaint against the insured. If the alleged facts even potentially trigger coverage under the policy, the insurer is bound to provide a defense. The duty to indemnify arises only when the policy actually covers the harm, and this duty typically cannot be determined until the resolution of the underlying claims. *Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra; Compass Ins. Co. v. City of Littleton, supra.*

A policy is triggered when a threshold event implicates its coverage. A policy that has not been triggered does not provide any coverage, while a policy that has been triggered may or may not provide coverage, depending on the circumstances of the case. *Pub. Serv. Co. v. Wallis & Cos.,* 986 P.2d 924 (Colo.1999).

## B.

[11] The liability insurance policies at issue here are "occurrence" policies. Occurrence policies protect an insured against claims made by third parties based on occurrences within the policy period that result in injury to the third parties' property interests. Under such policies, coverage is triggered only if the third party suffered actual damage within the policy period. *Browder v. U.S. Fid. & Guar. Co.,* 893 P.2d 132 (Colo. 1995)(where third parties sustained no injury during insured's policy period, there was no occurrence that would trigger coverage under that policy); *see also Union Pac. R.R. v. Certain Underwriters at Lloyd's, London,* 37 P.3d 524 (Colo.App.2001).

Under an occurrence policy, "the time of the occurrence of an accident is not the time the wrongful act was committed but the time when the complaining party was actually damaged." *Browder v. U.S. Fid. & Guar. Co., supra,* 893 P.2d at 134 n. 2. In *Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974), the supreme court concluded that the accident triggering coverage under the policy occurred at the time of the propane gas explosion and not when the allegedly wrongful act—the negligent installation of a gas line—was committed. It added: "To stretch the scope of 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlookedfor mishap would introduce ambiguity where none now exists." *Samuelson v. Chutich, supra,* 187 Colo. at 160, 529 P.2d at 635 (quoting *Home Mut. Fire Ins. Co. v. Hosfelt,* 233 F.Supp. 368 (D.Conn.1962)); *see also Pike v. American States Preferred Ins. Co.,* 55 P.3d 212 (Colo.App.2002).

The language used in defendants' policies is consistent with the legal principles articulated in *Browder.* The insuring agreement in defendants' commercial general liability policies provided that the insurer would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." It further provided: "This insurance applies only to 'bodily injury' and 'property damage' *which occurs during the policy period.* The 'bodily injury' or 'property damage' must be caused by an 'occurrence.'" (Emphasis added.) "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The umbrella policies did not obligate the insurer to defend, but provided that the insurer would pay "the ultimate net loss in excess of the underlying limit or the retained limit, whichever is greater," because of property damage caused by an occurrence. Property damage was defined as "[p]hysical injury to or destruction of tangible property *which occurs during the policy period,* including all resulting loss of use of that property," and "[l]oss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence during the policy period."* (Emphasis added.) "Occurrence" was defined in the umbrella policies, as pertinent here, as "an accident or a happening or event, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured."

Thus, under both the plain language of defendants' policies and the applicable law, coverage was available for the homeowners' property damage only if that damage occurred during the 1986–1993 policy periods.

## C.

The homeowners alleged in their complaint that, from 1991 through "at least 1993," preparation and development of their lots had been carried out "in an improper and destabilizing manner," in disregard of applicable soils reports and county requirements. However, the only allegation of

property damage resulting from such wrongful acts was the following:

> In or about March, 1998, the culmination of a continuous and progressive geologic hazard process manifested itself in the form of slope failure, landslide and/or landcreep on Green Mountain, damaging and/or otherwise significantly impairing all of the Plaintiffs' homes and underlying land. This process has resulted in actual property damage, a loss of the use and enjoyment of all or part of the Plaintiffs' homes and land, and an interruption of and eviction from some or all of the Plaintiffs' right of private occupancy, among other damages, losses and injuries.

The complaint did not allege that any of the homeowners suffered property damage before 1998.

Upon review of the homeowners' complaint and the language of defendants' policies, the trial court concluded that there was no coverage under any of the policies because the homeowners' claims did not involve any actual property damage during the policy periods. In so concluding, it rejected plaintiff's argument that "the occurrence which was insured against was the gradual slippage of the unstable soil which must have existed during the time period of the insurance policies."

Plaintiff again argues on appeal that the homeowners' complaint adequately alleged property damage during the defendants' policy periods. He asserts, first, that the relevant "occurrence" that triggered coverage was the "improper and destabilizing" pre-1993 cut-and-fill operations referenced in the complaint. We do not agree.

The allegations on which plaintiff relies referred to the negligence or other wrongful acts of the persons involved in preparing the lots. As such, they did not amount to allegations of property damage or of an "occurrence" that would trigger coverage. *See Browder v. U.S. Fid. & Guar. Co., supra; Samuelson v. Chutich, supra.*

We similarly do not agree with plaintiff that the reference in the underlying complaint to a "continuous and progressive geologic hazard process" can be construed to allege property damage within defendants' policy periods.

Notably, the complaint itself did not characterize such "geologic hazard process" as property damage, but alleged that it "has resulted in actual property damage." Nor did the complaint allege when the process began. As noted above, the Colorado Supreme Court has rejected similar efforts to "stretch the scope of 'accident' backward in time" to reach the date of the earliest event that might be regarded as having a causal connection with the occurrence. *Samuelson v. Chutich, supra,* 187 Colo. at 160, 529 P.2d at 635.

Plaintiff's reliance on environmental damage cases in support of his argument is misplaced. In such cases, the continuing migration of toxic pollutants on and underneath the land causes actual, tangible damage to the soil or water supply during an ongoing period. *See Hoery v. United States,* 64 P.3d 214 (Colo.2003). This case does not present a situation where pollutants have been introduced onto or under the soil, resulting in property damage. We are aware of no authority that holds that the gradual slippage of unstable soil, without more, amounts to "property damage." Further, the soil movement here is unlike the progressive corrosion that, in *American Employer's Ins. Co. v. Pinkard Construction Co.,* 806 P.2d 954 (Colo.App.1990), had already resulted in actual and widespread damage to a roof, during the relevant policy periods, before the roof finally collapsed.

Thus, even accepting plaintiff's contention that damage to the land alone, apart from the structures on it, could in some circumstances constitute property damage within the meaning of defendants' policies, the homeowners' complaint did not allege such property damage within the policy periods.

Nor did plaintiff contend, in opposing summary judgment, that discovery conducted after the filing of the complaint had revealed property damage within the policy periods. Rather, plaintiff relied on letters written by attorneys in the underlying case at a time when efforts were being made to persuade defendants to contribute to a settlement with the homeowners.

Plaintiff cited a statement in a letter from the homeowners' counsel, written to "assist you [plaintiff's counsel] in your communications with these other defendants and their carriers," that he expected his experts would testify "that immediately following the conclusion of the improper and inadequate cut and fill operations, the fill mass immediately began to differentially settle," water began to infiltrate, and cracks began to appear. However, even assuming the trial court could consider matters outside the complaint in deciding the issue before it, *see Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra,* letters consisting of hearsay within hearsay and referencing only nonspecific anticipated testimony could not, under C.R.C.P. 56, raise a genuine issue of fact sufficient to withstand summary judgment. *See Norton v. Dartmouth Skis, Inc.,* 147 Colo. 436, 364 P.2d 866 (1961); *Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612 (Colo.App.2003); *USA Leasing, Inc. v. Montelongo,* 25 P.3d 1277 (Colo.App.2001).

In sum, because the facts alleged by the homeowners did not, even potentially, trigger coverage under defendants' policies, defendants were not obligated to provide a defense or indemnification. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra.* Thus, they neither breached their contractual obligations to plaintiff nor acted in bad faith. *See Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550 (Colo.App.1998); *Jarnagin v. Banker's Life & Cas. Co.,* 824 P.2d 11 (Colo.App.1991). Summary judgment was therefore proper on all plaintiff's claims for relief.

## II.

In light of our resolution of this issue, we do not address plaintiff's additional contentions on appeal.

The judgment is affirmed.

Judge KAPELKE and Judge WEBB concur.