GLOBE INDEMNITY CO.,
Plaintiff–Appellee,

v.

TRAVELERS INDEMNITY COMPANY
OF ILLINOIS, Defendant–Appellant
and Cross–Appellee,

Northern Insurance Company of New
York, Defendant–Appellee,

and

Fidelity & Guaranty Underwriting
Company, Defendant–Appellee
and Cross–Appellant.

No. 01CA2242.

Colorado Court of Appeals,
Div. V.

Aug. 12, 2004.

McElroy, Deutsch & Mulvaney, Thomas E.
Napp, Jason D. Melichar, Denver, Colorado,
for Plaintiff–Appellee.

Donald Lawrence, Jr., P.C., Donald Lawrence, Jr., Littleton, Colorado, for Defendant–Appellant and Cross–Appellee.

Spies, Powers & Robinson, P.C., Jack D. Robinson, Chad D. Orvis, Denver, Colorado, for Defendant–Appellee.

Hustead Law Firm, P.C., Patrick Q. Hustead, Melissa W. Shisler, Jeremy A. Sitcoff, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge PICCONE.

Travelers Indemnity Company of Illinois, appeals the summary judgment in favor of Northern Insurance Company of New York, Globe Indemnity Company, and Fidelity & Guaranty Underwriting Co. Fidelity cross-appeals the judgment denying its motion for costs. We affirm in part, reverse in part, and remand with directions.

This is an appeal from a declaratory judgment that determined the rights and obligations of the four named insurance companies. The companies provided commercial general liability (CGL) insurance to Arvada Excavating Company, Inc. (Arvada) at various times between 1992 and 1998.

From 1991 to 1993, Arvada was responsible for the excavation work in a housing development. A group of homeowners sued Arvada for property damage caused by a landslide occurring in the spring of 1998, claiming that Arvada had improperly graded and compacted their lots.

The homeowners are Russell and Tricia Dampier, Ronald and Nancy Mangun Van Wechel, Bruce and Aud Lundy, Peter and Elizabeth Whitmore, Richard and Sharon Curley, Michael Brooks and Virginia Craighead, Floyd and Mary Youngblood, Cecil and Lynn Pike, and Thomas and Denise Gebes.

The companies insured Arvada as follows: Northern—January 1, 1992 to January 1, 1994; Globe—January 1, 1994 to January 1, 1996; Fidelity—January 1, 1996 to January 1, 1998; and Travelers—January 1, 1998 to January 1, 1999. The companies defended Arvada and jointly funded its settlement with the homeowners, and they reserved their rights to seek indemnification from one another for defense costs and for any money paid on Arvada's behalf and to seek a declaration of their respective duties to defend.

In this declaratory judgment action, Northern, Globe, and Fidelity moved for summary judgment, arguing that, as a matter of law, they were entitled to reimbursement from Travelers for their contributions to Arvada's defense and settlement because the damages the homeowners sought from Arvada were not covered under their policies. They also sought a declaration that they had no duty to defend Arvada and, therefore, were entitled to recover defense costs, including attorney fees, from Travelers.

The trial court granted summary judgment and ordered Travelers to reimburse Northern, Globe, and Fidelity for their contributions to settlement and defense costs, including attorney fees. The trial court denied Northern's, Globe's, and Fidelity's motions for costs.

I.

Travelers contends the trial court erred in granting summary judgment because genuine issues of material fact exist as to when the homeowners' property damage occurred. We disagree.

A. Summary Judgment

Summary judgment is a drastic remedy and should only be granted if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496 (Colo.2004); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298 (Colo. 2003); *Simpson v. Bijou Irrigation Co.*, 69 P.3d 50 (Colo.2003). We review a grant of summary judgment de novo. *Thompson v. Maryland Cas.*, *supra*; *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256 (Colo. 2003); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, *supra*, 74 P.3d at 299.

We also review de novo the interpretation of an insurance contract. We may not rewrite policy provisions that are clear and unambiguous, and we may neither add provisions to extend coverage beyond that contracted for nor delete them to limit coverage. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, *supra*; *see also Compass Ins.*

*Co. v. City of Littleton,* 984 P.2d 606 (Colo. 1999).

## B. Occurrence Policies

The policies at issue here provide the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' and will have the right and duty to defend any 'suit' seeking those damages." The insurance applies to "property damage" only if it is caused by an "occurrence" and is sustained during the policy period. "Property damage" is defined as "physical injury to property, including all resulting loss of use of that property." "Loss of use ... shall be deemed to occur at the time of the 'occurrence' that caused it."

The policies at issue are "occurrence" policies. Under an occurrence policy, coverage is triggered only if a third party suffered actual damage within the policy period. *Browder v. United States Fid. & Guar. Co.,* 893 P.2d 132 (Colo.1995); *Leprino v. Nationwide Prop. & Cas. Ins. Co.,* 89 P.3d 487 (Colo.App.2003). "[T]he time of the occurrence of an accident is not the time the wrongful act was committed but the time when the complaining party was actually damaged." *Browder, supra,* 893 P.2d at 134 n. 2; *see also Am. Employer's Ins. Co. v. Pinkard Constr. Co.,* 806 P.2d 954, 955 (Colo.App.1990)("coverage is provided if property damage occurs during the policy period"). Third parties seeking damages under a CGL policy must have "some legally recognizable injury to their interests during the policy period in order to recover." *Browder, supra,* 893 P.2d at 135.

Accordingly, under each policy, coverage is available for the homeowners' property damage only if the actual damage occurred during the policy period.

## C. Travelers' Arguments

Travelers contends questions of material fact remained as to the timing and character of the "property damage." Travelers argues that the homeowners' property damage was not the 1998 landslide, but was a continuous, progressive, and indivisible loss, extending through multiple policy periods. Travelers urges us to allocate responsibility for the settlement amounts among the four insurers according to a "time on the risk" methodology as set forth in *Public Service Co. v. Wallis & Cos.,* 986 P.2d 924 (Colo. 1999). We are not persuaded.

In their complaint, the homeowners alleged "In or about March 1998, the culmination of a continuous and progressive geologic hazard process manifested itself in the form of a slope failure, landslide and/or landcreep on Green Mountain, damaging and/or otherwise significantly impairing all of the plaintiffs' homes and underlying land."

Travelers' reliance on *Wallis,* an environmental pollution case, is misplaced. In *Wallis,* a company sued its insurer for several million dollars in costs it incurred in cleaning up environmental pollution on its property. There, the supreme court applied a "time on the risk" method, allocating indemnification costs among the various insurance policies involved because of the unique nature of the damage caused by the pollution, which would have been "virtually impossible" to assess at "particular points in time." *Wallis, supra,* 986 P.2d at 935. In so doing, the court noted the "atypical nature of the problem presented when an insured faces liability for long-term environmental pollution that spans multiple successive insurance policy periods." *Wallis, supra,* 986 P.2d at 935.

Here, pollutants were not introduced onto the land resulting in property damage that occurred over time. Rather, a single occurrence in the spring of 1998, the landslide, caused the damages of which the homeowners are complaining. *Cf. Hoery v. United States,* 64 P.3d 214 (Colo.2003)(the continuing migration of toxic pollutants on and underneath the land causes actual, tangible damage to the soil or water over time).

Further, in *Wallis,* the court set forth a method to apportion property damage among multiple successive insurance policies where it was undisputed that actual property damage occurred during each policy period. *Wallis, supra,* 986 P.2d at 939; *see Signature Dev. Cos. v. Royal Ins. Co.,* 230 F.3d 1215, 1223 (10th Cir.2000)("*Wallis & Cos.,* has no application where there is no evidence that the homes covered ... sustained damage during the coverage period"). The court

provided no indication that this "time on the risk" formula should be extended beyond environmental cases.

In a related case concerning the same 1998 landslide, a division of this court has expressly rejected the premise that "gradual slippage of unstable soil, without more, amounts to 'property damage.' " In so doing, the division held that the slippage of soil was distinguishable from damage caused by environmental pollution. *Leprino, supra,* 89 P.3d at 491. Thus, *Leprino* is dispositive of Travelers' contentions on this point.

We also disagree with Travelers that *American Employer's Insurance Co. v. Pinkard Construction Co., supra,* supports its contention. In *Pinkard,* a construction company installed a roof in 1973. The roof began corroding and eventually collapsed in 1984. Throughout this time, the owner was insured under a series of primary and umbrella CGL polices. Because of the ongoing, progressive nature of the damage to the roof, a division of this court elected to apply an "exposure theory trigger," determining that the continuous damage to the roof amounted to an "occurrence" during each policy period, triggering the various polices that had been in effect. *Pinkard* is distinguishable from the present case because it was undisputed that the property damage there, the corrosion, occurred during each policy period.

### 1. Youngbloods, Pikes, Gebes and Brooks/Craighead

Travelers conceded in the trial court that the property damage to the homes of the Youngbloods, Pikes, Gebes, and Brooks/Craighead occurred after Northern's, Globe's, and Fidelity's policies expired. Travelers stated, "As to homes that were purchased by the Plaintiffs [in the underlying action] after the expiration of [certain CGL policies]," the insurance carriers issuing those policies "would have no liability for coverage for damages of those homeowners by virtue of *Browder*." *Browder* requires that a party seeking damages under a CGL policy have an injury during the policy period in order to recover. *Browder, supra,* 893 P.2d at 135.

We agree that *Browder* controls. Accordingly, Northern, Globe, and Fidelity are not liable for damages sustained by the Young-

bloods, Pikes, Gebes, and Brooks/Craighead who bought their homes after those insurers' policy periods expired.

### 2. Northern

As to the five remaining homeowners, the Dampiers, Lundys, Whitmores, Curleys, and Van Wechels, there is no evidence of any property damage occurring during Northern's policy period.

Travelers relies on the reports of an expert retained by Globe and an expert retained by Fidelity to support its contention that summary judgment was not proper. Neither report establishes property damage to any of the homes during the Northern policy period.

The report from Fidelity's expert stated that although probable landslide movements were observed in 1995 that affected pavements, structural damage to the homes was first documented after Northern's policy had expired. Similarly, Globe's expert concluded that the only direct physical damage to the homes in question was first documented after the expiration of Northern's policy. Travelers asserts Globe's expert "would no doubt have conceded at trial that the damage observed by the Van Wechels was probably a result of this same continuous and progressive movement of the landslide mass that eventually culminated in 1998." This is merely argument by counsel and is therefore insufficient to raise a genuine issue of fact. *See Norton v. Dartmouth Skis, Inc.,* 147 Colo. 436, 364 P.2d 866 (1961); *Leprino, supra.*

We conclude no genuine issue of material fact exists as to whether the homes of the Dampiers, Lundys, Whitmores, Curleys, and Van Wechels sustained property damage during the time Northern's policy was in effect. Thus, summary judgment in favor of Northern and against Travelers as it relates to the properties owned by these five homeowners was proper.

### 3. Globe

As to the Dampiers, Whitmores, Curleys, and Lundys, there is no evidence of property damage during the time Globe's policy was in effect.

These homeowners testified their properties did not sustain any damage before

Globe's policy expired. Moreover, both experts agreed the first specific or direct damage to any of the homes was documented after Globe's policy had expired.

No genuine issue of material fact exists as to whether these homes sustained property damage during the period when Globe's policy was in effect. Accordingly, summary judgment in favor of Globe and against Travelers, as it relates to the homes owned by the Dampiers, Whitmores, Curleys, and Lundys, was proper.

#### 4. Fidelity

As to the Dampiers, Whitmores, and Curleys, there is no evidence of property damage occurring when Fidelity's policy was in effect. These homeowners testified they observed no property damage to their homes prior to March 1998. Further, neither expert could point to any damage, prior to the spring of 1998, to the homes owned by the Dampiers, Whitmores, and Curleys.

Thus, summary judgment in favor of Fidelity as it relates to the homes owned by the Dampiers, Whitmores, and Curleys was proper.

#### 5. Van Wechels and Lundys

The Van Wechels testified they first noticed damage in 1994 and 1995, during Globe's policy period, such as cracking in the garage, front porch, and basement. Mrs. Lundy testified she noticed a gap between the basement floor and the foundation in 1997, during Fidelity's policy period. The Lundys spent approximately $3,800 to repair this damage. Both experts documented structural damage to the home owned by the Lundys in 1997.

Nevertheless, Globe and Fidelity argue that the Van Wechels and Lundys may not recover from them for any pre–1998 damages, because their policies provide coverage "only where Arvada is legally obligated to pay damages." Thus, they argue, because the Van Wechels and Lundys are seeking damages caused only by the 1998 landslide, Globe and Fidelity have no duty to indemnify. We agree.

■ Before coverage can be found to exist, third parties must have "some legally recognizable injury to their interests during the policy period in order to recover." *See Browder, supra,* 893 P.2d at 135 ("occurrence policies protect an insured against *claims* made by third parties based upon occurrences within the policy period that result in injury to their (the third parties') property interest."). Thus, even where property damage during a policy period can be shown to have occurred, there must be a claim made for it before an insurance policy is triggered. *Leprino, supra* (a policy that has not been triggered does not provide any coverage).

Here, even assuming the Van Wechels and the Lundys suffered property damage prior to 1998 that was caused by Arvada, there is no evidence they sought to recover for any property damage that occurred during Fidelity's and Globe's policy period. The reference in the complaint to a "continuous and progressive geologic hazard process" cannot be construed to allege property damage. *See Leprino, supra.*

Accordingly, summary judgment is proper in favor of Fidelity and Globe as to the Van Wechels and Lundys.

#### II.

■ Travelers also argues the trial court erred in ruling that Northern, Globe, and Fidelity did not have a duty to defend Arvada and that Travelers must reimburse those insurers for the cost of defense. We disagree.

■ The duty to defend is independent of, and broader than, the duty to indemnify. "[T]he duty to defend encompasses any potential claims raised by the facts and the duty to indemnify relates to the actual liability imposed. . . ." *Cyprus Amax Minerals Co. v. Lexington Ins. Co., supra,* 74 P.3d at 299. The duty to defend is determined by the allegations in the underlying complaint and is triggered when "the underlying complaint against the insure[d] alleges any facts that might fall within the coverage of the policy." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo.1991); *see also Thompson v. Maryland Cas., supra; Cyprus Amax Minerals Co., supra.* "The duty to indemnify arises only when the policy actually covers the harm, and this duty typically cannot be determined until the resolution of the underlying claims." *Leprino, supra,* 89

P.3d at 489; *see Cyprus Amax Minerals Co., supra*. Where there is no factual or legal basis for which the insurer might eventually be held liable to indemnify the insured, the insurer does not have a duty to defend. *Hecla Mining, supra*, 811 P.2d at 1090.

■ "The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla Mining, supra*, 811 P.2d at 1089.

Here, the complaint did not allege that any of the homeowners suffered property damage before 1998. It asserted:

> In or about March 1998, the culmination of a continuous and progressive geologic hazard process manifested itself in the form of slope failure, landslide and/or landcreep on Green Mountain, damaging and/or otherwise significantly impairing all of the Plaintiffs' homes and underlying land. This process has resulted in actual property damage, a loss of the use and enjoyment of all or part of the Plaintiffs' homes and land, and an interruption of and eviction from some or all of the Plaintiffs' right of private occupancy, among other damages, losses and injuries.

A division of this court recently analyzed the duty to defend based on identical allegations of property damage. *Leprino, supra*, 89 P.3d at 489. *Leprino* is dispositive as it relates to the Dampiers, Whitmores, Curleys, Brooks/Craighead, Youngbloods, Pikes, and Gebes. Accordingly, Northern, Globe, and Fidelity did not have a duty to defend as to those homeowners.

With regard to the Van Wechels, Travelers contends that discovery conducted after the filing of the complaint revealed property damage within Globe's, Fidelity's, and its own policy period. With regard to the Lundys, Travelers contends that discovery conducted after the filing of the complaint revealed property damage within Fidelity's policy period.

However, as we have already determined, Globe and Fidelity have no duty to indemnify the Van Wechels and Lundys because these homeowners did not allege, and did not seek, compensation for damages that might have occurred during their policy periods. It follows that Globe and Fidelity have no duty to defend as to these homeowners.

Thus, we conclude Northern, Globe, and Fidelity did not have a duty to defend and are entitled to reimbursement from Travelers for defense costs, including attorney fees. Accordingly, we affirm the district court's grant of summary judgment.

### III.

■ Fidelity contends that the district court erred in not awarding it costs. We agree.

■ Although a trial court has wide latitude in determining which costs to award, the actual award of costs is not discretionary in an action such as this. A trial court must award costs to the prevailing party in a declaratory judgment action. Section 13–16–105, C.R.S.2003; C.R.C.P. 54(d); *see Gilmore v. Rubeck*, 708 P.2d 486 (Colo.App.1985). Fidelity, Northern, and Globe were granted summary judgment in the trial court and therefore were the prevailing parties.

■ Likewise, Northern argues on appeal that the trial court erred in failing to award it costs as the prevailing party. However, because unlike Fidelity, Northern did not file a notice of cross-appeal, this court has no jurisdiction to consider its argument. *See Ruffing v. Lincicome*, 737 P.2d 440, 442 (Colo.App.1987).

The summary judgment in favor of Northern, Globe, and Fidelity is affirmed. The judgment denying an award of costs is reversed as to Fidelity, and the case is remanded for a determination of Fidelity's costs.

CASEBOLT and CRISWELL *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.