**VILLAGE HOMES OF COLORADO, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY and Travelers Casualty Co. of Connecticut, foreign corporations, Defendants–Appellants.**

No. 04CA1396.

Colorado Court of Appeals, Div. IV.

June 15, 2006.

Certiorari Granted Oct. 16, 2006.

Roberts Levin & Patterson PC, Bradley A. Levin, Jeremy A. Sitcoff, Denver, Colorado, for Plaintiff–Appellee.

Ballard Spahr Andrews & Ingersoll LLP, Leslie A. Eaton, Denver, Colorado, for Defendants–Appellants.

CARPARELLI, J.

Defendants, Travelers Casualty and Surety Company and Travelers Casualty Co. of Connecticut (collectively Travelers), appeal the trial court's judgment in favor of plaintiff, Village Homes of Colorado, Inc. We affirm.

## I. Background

Travelers issued a comprehensive general liability (CGL) and a comprehensive excess liability (umbrella) insurance policy to Village Homes, a home builder. Subject to certain conditions, each policy provided coverage for occurrences during the period of August 1, 1995, to August 1, 1996.

In April 2000, three homeowners sued Village Homes, alleging that Village Homes was liable for construction defects related to expansive soils. In July 2001, a fourth homeowner sued Village Homes on the same basis. Village Homes tendered the defense of the cases to Travelers, which denied coverage.

Village Homes sued Travelers, alleging that it had settled the two underlying suits for approximately $788,580, and that Travelers was obligated to indemnify it for a total amount of about $315,000.

After receiving the case on stipulated facts, the court concluded that Travelers was obligated to indemnify Village Homes in the amount of $200,000.

Travelers contends that the trial court erred when it concluded there was coverage under the policies. We disagree.

## II. The Insuring Agreement

The CGL policy obligates Travelers to pay sums that Village Homes becomes legally obligated to pay as damages because of property damage that (1) is caused by an "occurrence" and (2) takes place during the policy period. The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Travelers concedes that because the parties stipulated that the property damage to the homes is $200,000, the umbrella policy is not implicated. Therefore, our analysis is limited to the terms of the CGL policy.

## III. Stipulated Facts

The homeowners alleged that the property damage that was caused by Village Homes' negligent construction began on the date the homes were first sold and continued through the date of the complaints. They alleged that, as a result of this continuing property damage, Village Homes was liable to them for damages as measured by, among other things, the cost of repairing the damage to the homes. ·

The parties submitted two stipulations of fact. To the first stipulation, they attached copies of the CGL policy, the complaints the homeowners filed in the two lawsuits, and certified copies of the homeowners' deeds. They also stipulated that:

- Travelers issued the CGL policy to Village Homes;
- the policy period was August 1, 1995, to August 1, 1996; and
- three of the homeowners purchased the homes from prior owners in 1997, and the fourth homeowner purchased the home in 1999.

In the second stipulation, the parties stipulated that:

- there was property damage to the four homes;
- the property damage resulted from an "occurrence",
- the "occurrence" was during the policy period; and
- the property damage to the homes during the policy period was $200,000.

The parties did not stipulate to any other allegations made in Village Homes' complaint or amended complaint.

## IV. Issue Presented

The parties presented this case to the trial court to determine whether the supreme court decision in *Browder v. United States Fidelity & Guaranty Co.*, 893 P.2d 132 (Colo. 1995), compels the conclusion that the CGL policy here does not afford coverage to Village Homes.

In the trial court, Travelers did not contend that (1) the sums Village Homes was legally obligated to pay to the homeowners did not constitute damages as that term is used in the insuring agreement; (2) Village Homes' liability to the homeowners was not premised on the stipulated occurrence; or (3) Village Homes' liability did not include the stipulated $200,000 damage to the property.

On appeal, Travelers does not contend that there is insufficient evidence to show that Village Homes' liability to the homeowners was because of property damage caused by an occurrence that took place during the policy period.

Based on *Browder,* Travelers argues that (1) coverage was not triggered because the homeowners acquired the homes after the expiration of the insurance policy, and (2) there is no coverage because the homeowners did not suffer any actual harm during the policy period.

## V. Policy Interpretation and Standard of Review

When determining the rights and obligations that exist under an insurance policy, we apply principles of contract interpretation and attempt to carry out the parties' reasonable expectations when the policy was issued. We enforce insurance contracts as written, giving the words and phrases their plain and ordinary meaning. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814 (Colo.2004); *Thompson v. Md. Cas. Co.,* 84 P.3d 496 (Colo.2004). "Our construction of the policy provisions must be 'fair, natural and reasonable' rather than strained or strictly technical." *Pub. Serv. Co. v. Wallis & Cos.,* 986 P.2d 924, 939 (Colo.1999)(quoting *Johnson v. Am. Family Life Assurance Co.,* 583 F.Supp. 1450, 1453 (D.Colo.1984)). "Courts should not rewrite insurance policy provisions that are clear and unambiguous." *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). However, when the terms of an insurance policy are ambiguous, they must be strictly construed against the insurer and in favor of the policyholder. *Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.,* 947 P.2d 341 (Colo.1997); *U.S. Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.,* 842 P.2d 208, 211 (Colo.1992); *Am. Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 953 (Colo.1991).

We review the trial court's interpretation of an insurance contract de novo. *Globe Indem. Co. v. Travelers Indem. Co.,* 98 P.3d 971, 973 (Colo.App.2004).

## VI. Coverage Triggered

Travelers argues that coverage was not triggered. We disagree.

### A. Trigger of Coverage

"Trigger of coverage" refers to circumstances that activate coverage under a CGL policy and is determined based on the language of the policy. So-called claims-made policies provide coverage "for *claims* made during the policy period", in contrast, "an occurrence policy provides coverage for all *'occurrences'* which take place during a policy period." *Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1357 (Colo.1993) (emphasis added).

> Triggering occurs when a threshold event implicates an insurance policy's coverage. The fact that a policy has been triggered means that there may be liability coverage under that policy, subject to the policy's terms, the application of any exclusions in the policy, and any other defenses the insurer may raise. Thus, a policy that has not been triggered does not provide any coverage, while a policy that has been triggered may or may not provide coverage, depending on the circumstances of the case.

*Pub. Serv. Co. v. Wallis & Cos., supra,* 986 P.2d at 937 n. 11.

In occurrence policies, the trigger of coverage is usually bodily injury or property damage during the policy period. Consequently, an occurrence policy that was in effect when injury or damage happened may provide coverage even when a claim alleging that the policyholder is liable for the injury or damage is not filed until many years later. In this way, an occurrence policy does not expire, but, rather, continues in effect after the policy period ends.

### B. Conclusion Regarding Trigger

Travelers stipulated that there was property damage to the purchasers' homes, the property damage resulted from an occurrence, the occurrence was during the policy period, and the property damage to the homes during the policy period was $200,000.

It thus stipulated to all conditions necessary to trigger coverage.

Nonetheless, Travelers contends that there is "no operative effect" to its stipulation that there was property damage resulting from an occurrence during the policy period because coverage was not triggered. However, the determination of whether coverage is triggered is based on the application of the policy terms to the facts. Under the plain and ordinary meaning of the policy terms here, the triggering event is an occurrence during the policy period, and Travelers stipulated to that event.

Therefore, we conclude that coverage was triggered.

## C. Travelers' Contentions

We reject Travelers' contention that *Browder, supra*, requires us to conclude that coverage was not triggered.

In *Browder*, a general contractor built and sold a motel. For five months during construction and nine months after construction was completed, the seller was insured under a special multi-peril policy. On the day the policy period ended, the seller sold the motel and transferred ownership of the insurance policy to the same purchasers.

The policy obligated the insurer to pay all sums the seller became legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence and "arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the seller conducted at or from the insured premises." *Browder, supra*, 893 P.2d at 134. The policy indicated that it applied to liability the seller assumed under a warranty that work performed by or on behalf of the seller would be done in a workmanlike manner.

More than eight years later, the purchasers discovered cracking and sagging in the buildings and sued the seller for failure to construct the motel in a workmanlike manner. The seller filed for bankruptcy, and the purchasers filed a proof of claim that resulted in a stipulated judgment.

The trial court granted the insurer's motion for summary judgment, and the supreme court affirmed, holding that no occurrence that would trigger coverage under the policy damaged the purchasers' interest while the seller "was the insured." *Browder, supra*, 893 P.2d at 135. The court stated that "any liability [seller] may have had for damages to the [purchasers] would not have been triggered until the policy was no longer in effect." *Browder, supra*, 893 P.2d at 135.

### 1. Coverage After Policy Period

Travelers misconstrues the court's meaning of the phrase "no longer in effect."

Although the occurrence policy in *Browder* would normally have remained in effect and continued to provide coverage to the seller after the policy period ended, the seller transferred the policy and, thereby, endeavored to transfer coverage under it. Contrary to Travelers' contention, the phrase "no longer in effect" does not refer to the end of the policy period, but, rather, to the fact that the seller's liability arose after coverage had been transferred.

This interpretation is confirmed later in the *Browder* decision where the court stated that a 1993 Massachusetts decision was unpersuasive and distinguishable. The court again explained that, as soon as the *Browder* purchasers obtained their ownership interest, the seller "immediately ceased" to be insured pursuant to the concurrent assignment of the policy, and any "occurrence that would trigger coverage under the policy" damaged the purchasers' legal interests only after the seller was no longer insured under the policy. *Browder, supra*, 893 P.2d at 135 (distinguishing *Trs. of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993)).

### 2. Accident Required to Trigger Coverage

Travelers also misconstrues the *Browder* court's holding that there must be actual damage to a third party to trigger coverage.

Determining what event triggers coverage is not always easy, especially when, as here, the policy requires that there be an "accident" during the policy period.

In *Samuelson v. Chutich*, 187 Colo. 155, 529 P.2d 631 (1974), the insured's allegedly negligent act occurred during the policy period, but the negligence did not result in bodily injury until it caused an explosion after the policy period. The policy applied only to "accidents" that occurred during the policy period, and the issue was whether there had been such an accident. The supreme court ruled that the term "accident" implies a misfortune and injury or damage to a victim, and not the negligent act that causes the "misfortune." Thus, the court concluded that the accident occurred at the time of the explosion, not when the allegedly negligent acts were committed. *Samuelson v. Chutich, supra*, 187 Colo. at 160, 529 P.2d at 634.

In *Browder*, the policy was triggered when an accident resulted in bodily injury or property damage during the policy period. Citing *Chutich*, the court stated that liability insurance does not compensate an insured for his own loss, but, rather, for damages the insured must pay to others because of his own actions. *Browder, supra*, 893 P.2d at 134 n. 3 (citing Rowland H. Long, *The Law of Liability* § 1.01 (1994)). Citing *Bartholomew v. Insurance Co. of North America*, 502 F.Supp. 246 (D.R.I.1980) (an "accident" occurs when the negligent act results in injury to another), *aff'd sub nom. Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir. 1981), the *Browder* court stated that "[i]t is well-settled that the time of the occurrence of an accident is not the time the wrongful act was committed but the time when the complaining party was actually damaged." *Browder, supra*, 893 P.2d at 134 n. 2.

Thus, there is no "accident" when an insured's negligence damages the insured's property. Instead, an "accident" occurs only when the insured's negligence results in bodily injury to someone else or damage to property owned by another. As the *Browder* court stated, a basic tenet of liability insurance is that "a third party must suffer actual damage within the policy period [for the insured] to recover under a liability policy." *Browder, supra*, 893 P.2d at 134.

Indeed, other divisions of this court have applied *Browder* consistently with this understanding of the rule. *See Globe Indem. Co.*

*v. Travelers Indem. Co., supra* (policyholder entitled to CGL coverage when there was no dispute that actual damage to the property occurred during the policy period); *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487 (Colo.App.2003)(policyholder was not entitled to coverage when the third party's complaint did not allege actual damage to property during the policy period); *Union Pac. R.R. v. Certain Underwriters at Lloyd's, London*, 37 P.3d 524 (Colo.App. 2001)(where policyholder denied liability in a consent decree and the agency concluded that no remedial action was necessary, policyholder failed to establish requisite damage to property and, therefore, was not entitled to indemnification).

Contrary to Travelers' argument, the *Browder* court's observation of the existence of a "basic tenet" of liability insurance did not expand the scope of existing law or create a new tenet. Nor did the *Browder* court overrule other cases in which it had held that insurance contracts are to be enforced as written, giving the policy's words and phrases their plain and ordinary meaning, and applying them to the facts of a particular case. For these reasons, we decline to adopt the reasoning in *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028 (Colo.App. 2005)(*cert. granted* Mar. 20, 2006, 2006 WL 1586645), in which a division of this court concluded that a policyholder was not entitled to coverage where the property damage occurred before the third-party claimants purchased the damaged property.

Based on the terms of the policy, the decision in *Browder*, and the authorities upon which the *Browder* court relied, we reject Travelers' contention that the party to whom the insured becomes liable must have owned the damaged property during the policy period.

### 3. Accident Stipulated

The insuring agreement obligates Travelers to pay all sums that Village Homes becomes legally obligated to pay as damages because of property damage that is caused by an occurrence during the policy period. For there to be an occurrence during the policy period, there must have been an "acci-

dent" that resulted in bodily injury or property damage during that period. And, here, Travelers stipulated that there was an occurrence and property damage to the homes during the policy period. The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, under the terms of the policy, when Travelers stipulated that there had been an occurrence, it also stipulated that there had been an accident during the policy period.

4. Ownership at Time of Property Damage

Travelers also relies on the *Browder* court's reliance on *Hoppy's Oil Service v. Insurance Co. of North America,* 783 F.Supp. 1505, 1508 (D.Mass.1992), and the fact that it distinguished the holding in *Garriott Crop Dusting Co. v. Superior Court,* 221 Cal.App.3d 783, 270 Cal.Rptr. 678 (1990). Again, Travelers' reasoning is not persuasive.

The *Browder* court also applied the "owned property exclusion." There, the seller owned the property and the policy during the entire policy period, and during that time, its coverage rights were subject to the policy's conditions and exclusions. The owned property exclusion expressly barred coverage for damage to property owned or occupied by the seller. Thus, the court concluded that the policy excluded coverage for any damage to the motel during the policy period because the premises were owned by the seller during that entire period.

In this regard, the supreme court referred to the decision in *Garriott Crop Dusting Co. v. Superior Court, supra,* and noted that the policies in *Garriott* stated that the damaged property "must not belong to the insured." *Browder, supra,* 893 P.2d at 135; *Garriott, supra,* 270 Cal.Rptr. at 682. The supreme court then distinguished the facts in *Garriott,* observing that the claimant there "had a possible subrogated right to pursue an action against the insurer," *Browder, supra,* 893 P.2d at 135, but that (1) the seller was the only party in *Browder* who sustained damage during the policy period, (2) the seller was expressly precluded from asserting a coverage claim because of the owned property exclusion, and, thus, (3) the purchasers could not recover as subrogees of the seller.

The court's discussion of *Garriot Crop Dusting* is consistent with its reliance on *Hoppy's Oil Service v. Insurance Co. of North America, supra.* The facts in *Hoppy's Oil* were similar to those in *Browder.* In *Browder,* the seller built the motel and, upon its completion, owned and operated it during the policy period. The third party acquired the property after the policy period ended. In *Hoppy's Oil,* the insured owned and leased premises for use as a gasoline station from 1969 to 1985, during which time underground storage tanks leaked. The insurance policies provided coverage from July 1982 through June 1985. The third party acquired the property in July 1985, immediately after the last policy period ended.

The policy in *Browder* excluded coverage for damage to property owned by the seller. Similarly, the policy in *Hoppy's Oil* excluded coverage for damage to "(1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." *Hoppy's Oil Serv. v. Ins. Co. of N. Am., supra,* 783 F.Supp. at 1508.

Particularly in view of the exclusion of coverage for damage to property owned by the insured, the *Hoppy's Oil* court concluded that the essential predicate of property damage during the policy period could not be considered without attention to ownership of the property.

The court in *Hoppy's Oil* also rejected the third party's contention that it did not matter that the property was owned by the insured at the time of the occurrence, concluding that the policies applied to claims made by third parties "based upon occurrences within the policy period that result in injury to their (the third parties') property interests." *Hoppy's Oil Serv. v. Ins. Co. of N. Am., supra,* 783 F.Supp. at 1508. Acknowledging that the state supreme court had not yet considered the precise issue before it, the *Hoppy's Oil* court stated that its conclusion was consistent with relevant state precedent holding that an accident occurs not at the time of the

wrongful act, but when the complaining party was actually damaged. *Hoppy's Oil Serv. v. Ins. Co. of N. Am., supra,* 783 F.Supp. at 1508.

Citing *Hoppy's Oil,* the *Browder* court stated that "[o]ccurrence policies protect an insured against claims 'made by third parties based upon occurrences within the policy period that result in injury to their (the third parties') property interest.' " *Browder, supra,* 893 P.2d at 134. Based on the court's citation to *Hoppy's Oil,* it is apparent that this statement simply emphasized the rule that, when there is an owned property exclusion, (1) there is no coverage for damage to property owned by the insured, and (2) it would be contrary to that exclusion to allow the owner to transfer title of damaged property to a third party and then to seek coverage for liability arising from that same damage.

Here, however, the owned property exclusion was not in issue. The homeowners' suit against Village Homes alleged that the property damage began on the date the homes were first *sold* and continued through the date of the complaints. And, in the coverage suit, Travelers did not allege that the property damage occurred while Village Homes owned the property, or that coverage is barred by the owned property exclusion.

Thus, we reject Travelers' contention, based on *Hoppy's Oil* and *Browder,* that Village Homes is not entitled to coverage because the homeowners to whom Village Homes is obligated to pay damages did not own the homes during the policy period.

## VII.   Conclusion

Travelers stipulated that there was property damage to the homes, that it resulted from an occurrence during the policy period, and that the damage to the homes during the policy period was $200,000. And, under the policy's definition of an occurrence, Travelers thus stipulated that there had been an accident and $200,000 in property damage during the policy period. Under the insuring agreement Travelers was obligated to pay the sums Village Homes was legally obligated to pay the homeowners. And Travelers did not contend that the $200,000 of damage during

the policy period was not the cause of Village Homes' liability to the homeowners.

We conclude that the trial court correctly held that, under the terms of the policy, Travelers must pay $200,000 of the total sum Village Homes is obligated to pay to the homeowners.

The judgment is affirmed.

ROY, J., specially concurs.

RUSSEL, J., dissents.

Judge ROY specially concurring.

I concur with my colleague in the majority that we must enforce insurance contracts as written, giving the words and phrases their plain and ordinary meaning; that the coverage was triggered; and that the judgment should be affirmed, the result he reaches. My colleagues feel they must either follow *Browder v. United States Fidelity & Guaranty Co.,* 893 P.2d 132 (Colo.1995), as does my colleague in dissent; or distinguish it within the context of its analysis as does my colleague in the majority.

I write separately because, in my view, *Browder* should be limited to its unique facts and its analysis should not be applied to commercial general liability insurance coverages or, in the alternative, it should be revisited. While I can only suggest the latter, I feel compelled to do the former. I conclude that *Browder* has no application to this case.

In *Browder,* the insured constructed, operated, and then sold a motel to the plaintiffs. Apparently, during the later few months of the construction phase and then into the operation phase, the insured was insured under, among other policies, a special multi-peril insurance policy issued by the insurer.

The policy provided that the insurer would pay all sums the insured was obligated to pay for "property damage ... caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises." "Occurrence" was defined as "an accident," which was defined as "including injurious exposure

to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Property damage meant "injury to or destruction of tangible property." *Browder, supra,* 893 P.2d at 134. The policy also had an "owned property" exclusion which provided, "This insurance does not apply ... to property damage to property owned or occupied by or rented to the insured." *Browder, supra,* 893 P.2d at 135.

The insurance policy expired by its own terms on the date of the transfer of the motel to the plaintiffs, and the policy was assigned by the insured to the plaintiffs at closing. Several years later, while the motel was owned by the plaintiffs, defects in the construction of the motel manifested themselves in the form of severe cracks in the structure. The plaintiffs sued the insured under a negligent construction theory for the damage to the motel and obtained judgment in the amount of $572,000.

The plaintiffs then sued the insurer on indemnification and assignment theories. The court characterized the plaintiffs' claims on appeal as: "They did not sue [insurer] as insureds but sought recovery as injured third parties, claiming their losses were covered by the policy and that they became subrogated to [the insureds'] rights." *Browder, supra,* 893 P.2d at 133.

Subrogation is defined as the substitution of "one person ... in the place of another with reference to a lawful claim, demand or right of the other in relation to the debt or claim, and its rights, remedies or securities." *See Browder, supra,* 893 P.2d at 135 n. 4 (citing *Black's Law Dictionary* 1427 (6th ed.1990)).

It is clear to me that the plaintiffs in *Browder* asserted a first-party claim for indemnification as subrogees of the insured. It appears to me that both the majority and concurring opinions treated the plaintiffs' claim as a first-party property damage claim. The majority held that the plaintiffs could not recover under either of two theories, each of which was sufficient unto itself for denying coverage. Therefore, one is dictum. The majority stated:

We find the [plaintiffs] did not sustain actual damage to their property during the applicable policy period and therefore no insurance coverage was triggered under the ... policy. Even assuming that coverage exists under the policy, the [plaintiffs] cannot recover as subrogees due to the owned property exclusion which prevents [the insured] from maintaining any claim against [the insurer] to which the [plaintiffs] could be subrogated.

*Browder, supra,* 893 P.2d at 136.

Justice Erickson, in his concurring opinion, stated as much:

No claim has been made against [the insured] or [the plaintiffs] that any injuries occurred as a result of the ownership, maintenance, or use of the motel.

As the owner of the property, [the insured] could not have brought an action against [the insurer] under the ... policy. If the [plaintiffs] sued as [subrogees], they would only acquire the rights of [the insured]. The ... policy did not provide coverage to [the insured] for negligence in the construction of the building.

*Browder, supra,* 893 P.2d at 137 (Erickson, J., concurring).

Because (1) the language limits liability coverage to claims arising out of the operation of a business on the insured premises; (2) the concurring opinion states that the policy covered a motel operation and did not cover the insured for negligence in construction of the motel; (3) the court of appeals stated in its opinion, *see Browder v. U.S. Fid. & Cas. Co.,* 873 P.2d 16 (Colo.App.1993), that construction was completed in July 1975; and (4) the effective date of the policy was February 17, 1975, it is apparent to me that the policy covered a motel operation.

It is my opinion that the facts that the policy was a "special multi-risk insurance policy" covering a motel operation and not a "commercial general liability policy" and that the plaintiffs were suing as subrogees make all the difference. The named insured could not have brought a construction defect claim under the policy because the policy did not insure against negligent construction and, in any event, the insured would be claiming

damages to its property arising from its own negligence. Therefore, it was the nature of the coverages and the subrogation that dictated the result in *Browder*. Based on these circumstances, *Browder*, in my view, has no application here.

Here, we are dealing with a commercial general liability policy issued to a "contractor." The policy (1) requires the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' " "to which this insurance applies", (2) provides that it applies to "bodily injury" and "property damage" that "is caused by an 'occurrence' that takes place in the 'coverage territory' ... and occurs during the policy period"; and (3) defines "coverage territory" as the United States of America (including its territories and possessions), Puerto Rico, Canada, international waters and airspace (with limitations), and all parts of the world (with limitations). It lacks the language of limitation which appears in the *Browder* that the liability must arise out of the operation of a particular business on defined premises.

Here, the allegations of negligence relate to the design and installation of the footings, which occurred during the policy period. The parties have stipulated that (1) there was property damage to the homes; (2) the property damage resulted from an "occurrence", (3) the "occurrence" was during the policy period; and (4) the property damage to the homes during the policy period was $200,000.

The only issue presented here is whether the current owners were required to own the homes during the policy period when both the occurrence and the damage occurred. This is not a first-party property damage case. Here, the liability provisions are not limited to a particular business activity unrelated to the construction of the homes. That, in my view, is the end of the inquiry. In my view, the insurer has stipulated itself into liability under its policy.

I am aware that *Browder* has been applied to comprehensive general liability insurance policies for its holding that the plaintiff must own the property during the policy period in order to recover on a negligence theory, or,

at least, *Browder* has been cited for that proposition. *See Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028 (Colo.App. 2005) (*cert. granted* Mar. 20, 2006, 2006 WL 1586645); *Globe Indem. Co. v. Travelers Indem. Co.*, 98 P.3d 971 (Colo.App.2004); *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487 (Colo.App.2003); *Union Pac. R.R. v. Certain Underwriters at Lloyd's, London*, 37 P.3d 524 (Colo.App.2001). For the reasons stated, I would not follow these cases, nor would I cite *Browder* for that proposition.

Finally, I find support for my position in what I view as an incongruity in the majority opinion in *Browder*. The majority cited with approval *Hoppy's Oil Service, Inc. v. Insurance Co. of North America*, 783 F.Supp. 1505 (D.Mass.1992), and rejected the analysis and conclusion reached in *Trustees of Tufts University v. Commercial Union Insurance Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993). Both construe and apply the law of the State of Massachusetts. In *Hoppy's*, a federal court, without the benefit of any Massachusetts authority, construed and applied a special multi-risk insurance policy and concluded, as did the majority in *Browder*, that the plaintiff must have owned the property during the policy period in order to recover for damage to the property occurring during that period. Subsequently, in *Trustees of Tufts University*, the Supreme Judicial Court of Massachusetts, construed and applied a commercial general liability policy and declined to follow *Hoppy's*. Therefore, dare I say it, I agree with the Supreme Judicial Court of Massachusetts that *Hoppy's* and, ergo *Browder*, has no application here.

I join in affirming the judgment.

Judge RUSSEL dissenting.

The separate opinions of Judge Carparelli and Judge Roy constitute a majority decision as to the result. Because I would reach a different result, I respectfully dissent.

The majority opinions offer different explanations as to what lies below the surface of the supreme court's decision in *Browder v. United States Fidelity & Guaranty Co.*, 893 P.2d 132 (Colo.1995). That such explanations

were thought necessary suggests that *Browder* should be revisited and, at the least, clarified.

The supreme court may revisit *Browder* when it decides *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028 (Colo.App. 2005) (*cert. granted* Mar. 20, 2006, 2006 WL 1586645). Until *Browder* is abrogated or modified, however, the decision, as written, is binding precedent. I think *Browder* controls here, and I think it requires a result different from the one reached by the majority.

The issue is whether Travelers must cover claims for property damage that occurred during the policy period, even though the claimants had no interest in the homes during that period.

Village Homes contends that it should not make any difference whether the claimants owned the homes during the policy period. I acknowledge that its position has merit under the plain language of the policies. *See Trs. of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68, 72 (1993) (construing similar language to find coverage where the claimant did not have an interest in the property during the policy period); *see also Century Indem. Co. v. Hearrean*, 98 Cal.App.4th 734, 120 Cal.Rptr.2d 66 (2002).

I conclude, however, that Village Homes' position is defeated under *Browder*.

In *Browder*, a builder bought liability insurance to cover its activities during the construction and operation of a motel. On the day that the policy expired, the builder sold the motel, along with its rights under the insurance policy, to the plaintiffs. After discovering construction defects, the plaintiffs obtained a judgment against the builder. The plaintiffs then sued the insurance company as the builder's subrogees to recover the amount of their judgment.

The supreme court held that the plaintiffs could not recover because they "did not experience any actual damage from the faulty construction until they purchased the property." *Browder v. U.S. Fid. & Guar. Co., supra*, 893 P.2d at 134–35. The court recognized that the policy did not expressly require that a claimant own the property dur-

ing the policy period, and it recognized that courts in other jurisdictions had allowed relief for claimants in similar situations. But the court concluded that, to trigger coverage, a claimant must have a legally cognizable interest in the property during the policy period:

> We find the reasoning of *[Trustees of Tufts University v. Commercial Union Insurance Co., supra]* unpersuasive. Although the policy does not expressly require that the [claimants] *own* the property during the policy period, the [claimants] must have some legally recognizable injury to their interests during the policy period in order to recover. The [plaintiffs] sustained no injury to their interest until they owned the motel property.

*Browder v. U.S. Fid. & Guar. Co., supra*, 893 P.2d at 135.

Thus, under *Browder*, the claimant must have an interest in the property during the policy period in order to trigger coverage under a commercial general liability policy. *See Hoang v. Monterra Homes (Powderhorn) LLC, supra*, 129 P.3d at 1037; *see also Globe Indem. Co. v. Travelers Indem. Co.*, 98 P.3d at 971 (Colo.App.2004); *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 490 (Colo.App.2003); *Union Pac. R.R. v. Certain Underwriters at Lloyd's, London*, 37 P.3d 524, 525 (Colo.App.2001). In other jurisdictions, *Browder* is recognized as authority for this proposition. *See Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805, 810 n. 3 (4th Cir.1998); *Century Indem. Co. v. Hearrean, supra*, 120 Cal. Rptr.2d at 70 n. 2.

I recognize that there is a potentially important difference between *Browder* and this case, but I conclude that Village Homes is not entitled to relief on this basis.

In *Browder*, the plaintiffs were foreclosed on two grounds: (1) they could not trigger coverage by asserting their own claims for property damage because they had no interest in the property during the policy period; and (2) they could not trigger coverage by asserting claims as the subrogees of the original owner because they bought from the insured, an entity expressly precluded from

asserting claims under the policy's "owned property" exclusion. *See Browder v. U.S. Fid. & Guar. Co., supra,* 893 P.2d at 135–36 (distinguishing *Garriott Crop Dusting Co. v. Superior Court,* 221 Cal.App.3d 783, 270 Cal. Rptr. 678 (1990)).

Here, the claimants bought their homes, not from the insured builder, but from the original homeowners—third parties who suffered property damage during the policy period. Therefore, unlike the plaintiffs in *Browder,* the claimants could have triggered coverage under the policies by asserting claims as subrogees of the original owners.

However, the record indicates that the claimants did not sue Village Homes as subrogees of the original owners:

- The record contains the warranty deeds that conveyed the homes from the original owners to the claimants. The deeds contain only traditional language used to convey real property. None of the deeds purport to convey the right to sue for property damage. *See Hoang v. Monterra Homes (Powderhorn) LLC, supra,* 129 P.3d at 1037 ("We are aware of no Colorado authority holding that a subrogation or assignment of claims occurs as a matter of law upon the transfer of title to real property."); *Ford v. Summertree Lane Ltd. Liab. Co.,* 56 P.3d 1206 (Colo.App.2002) (a general warranty deed conveying real property does not convey tort or contract claims).

- The record also contains the complaints that the claimants filed against Village Homes. Although the claimants asserted various theories, they did not mention subrogation. The claims are based on the claimants' own rights, not on the rights of their predecessors in interest. *See Neb. Beef, Ltd. V.[v.] Universal Sur. Co.,* [9 Neb.App. 40,] 607 N.W.2d 227, 235 (Neb.Ct.App.2000) ("Ordinarily, one seeking subrogation must plead it and set forth the facts from which the right of subrogation arises.").

I therefore conclude that the trial court erred in ruling that Travelers must indemnify Village Homes for the property damage that occurred during the policy period. Accordingly, I would reverse the judgment.